MORGAN, LEWIS & BOCKIUS LLP
John S. Battenfeld, Bar No. 119513
john.battenfeld@morganlewis.com
Julianne G. Park, Bar No. 312791
julianne.park@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:  +1.213.612.2500
Fax:  +1.213.612.2501

Attorneys for Defendant
TESLA, INC., F/K/A TESLA MOTORS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM GARCIA, individually, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKNOWN) AND DOES 1 TO 50,<br><br>Defendant. | Case No. 2:25-CV-00302<br><br>[Los Angeles County Superior Court, Case No. 24STCV19700]<br><br>**DEFENDANT TESLA, INC.'S NOTICE OF REMOVAL**<br><br>[28 U.S.C. §§1332(d)(2), 1441, 1446 and 1453] |

**TO THE CLERK OF THE CENTRAL DISTRICT OF CALIFORNIA AND PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant TESLA, INC., formerly known as TESLA MOTORS, INC. ("Defendant" or "Tesla"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California, County of Los Angeles, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. This removal is based on the following grounds:

## I.  PROCEDURAL BACKGROUND.

1. On August 6, 2024, Plaintiff Abraham Garcia ("Plaintiff") filed a class action complaint in the Superior Court of the State of California, County of Los Angeles, entitled *Abraham Garcia v. Tesla Motors, Inc., dba Tesla, Inc.*, Case No. 24STCV19700. On October 10, 2024, Plaintiff filed the operative First Amended Class Action & PAGA Complaint (the "FAC").

2. On November 21, 2024, Plaintiff provided a Notice and Acknowledgment of Receipt, along with copies of the Summons, original Complaint, FAC, Civil Case Cover Sheet, Notice of Case Assignment, and Alternative Dispute Resolution Information Packet. On December 11, 2024, Defendant returned the Acknowledgement of Receipt, at which time, the service was complete. On December 5, 2024, Plaintiff served a unilateral case management conference statement for a December 13, 2024, initial status conference that was continued as Defendant had not yet appeared. True and correct copies of these documents are attached hereto as **Exhibit A**. **Exhibit A** constitutes all the pleadings, process, and orders served upon or filed by Tesla in the Superior Court action.

3. The FAC seeks damages and penalties on behalf of a putative class for: (1) failure to pay all wages including minimum and overtime wages; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to provide recovery periods; (5) failure to produce personnel records; (6) failure to produce

signed records; (7) failure to implement heat prevention & maintain legal temperature controls; (8) to provide accurate itemized wage statements; (9) failure to pay waiting time penalties; (10) failure to reimburse for necessary business expenditures; (11) violation of California's quota laws; (12) violation of WARN Action; (13) unfair business practices; and (9) civil penalties under the Private Attorneys General Act ("PAGA").  (Ex. A, FAC ¶¶ 76-209).

4. Plaintiff alleges all Causes of Action individually and on behalf of a putative class of current and former employees.  Plaintiff seeks to represent a class defined as "All current and former non-exempt employees employed by [Tesla] in the State of California within four years prior to the filing of this action to the date of class certification." (Ex. A, FAC ¶ 40).

## II.   REMOVAL IS TIMELY.

5. Because Tesla is filing this Notice of Removal within thirty days of service of the FAC, it is timely under 28 U.S.C. §§ 1446(b)(3) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).  No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.   JURISDICTION

6. This is a putative class action.[1]  (Ex. A, FAC, ¶¶ 1-2, Prayer for Relief ¶ 1).  Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Tesla, (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the FAC places in controversy more than $5 million, exclusive of interest and costs.  28

---

[1] Tesla denies, and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action.  Tesla further denies Plaintiff's claims and denies that he can recover any damages.

U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453.[2] Although Tesla denies Plaintiff's factual allegations and denies that Plaintiff—or the class he purports to represent—are entitled to the relief requested, based on Plaintiff's allegations in the FAC and Prayer for Relief, all requirements for jurisdiction under CAFA have been met in this case.

### A. Complete Diversity of Citizenship Exists Between the Parties.

7. To satisfy CAFA's diversity requirement, a removing party must establish only that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

8. For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

9. In his Complaint, Plaintiff alleges that he was employed by Tesla in Los Angeles County, California. (Ex. 1, FAC ¶ 15). Plaintiff further alleges that he is a citizen of California who resides in Los Angeles County. (*Id.*) Per Tesla's

---

[2] Tesla denies Plaintiff's factual allegations and denies that Plaintiff and members of the putative class are entitled to any relief whatsoever.

1  records, Plaintiff's last known address is in California.  Accordingly, Plaintiff is a

2  citizen of California for purposes of removal.  Plaintiff is not a citizen of Texas.

3        10.  For CAFA diversity purposes, a corporation is deemed to be a citizen

4  of any state in which it has been incorporated and of any state where it has its

5  principal place of business.  28 U.S.C. § 1332(c)(1).  The "principal place of

6  business" for the purpose of determining diversity subject matter jurisdiction refers

7  to "the place where a corporation's officers direct, control, and coordinate the

8  corporation's activities . . . [I]n practice it should normally be the place where the

9  corporation maintains its headquarters—provided that the headquarters is the actual

10  center of direction, control, and coordination, i.e., the 'nerve center,' and not simply

11  an office where the corporation holds its board meetings . . . ."  *See Hertz Corp. v.*

12  *Friend*, 559 U.S. 77, 92-93 (2010).

13        11.  Defendant Tesla is a corporation organized under the laws of the State

14  of Texas.  Additionally, its principal place of business and corporate headquarters is

15  in Austin, Texas, where its officers direct, control, and coordinate corporate

16  activities.[3]

17        12.  As a result, Tesla is now, and was at the time of the filing of this

18  action, a citizen of Texas within the meaning of the Acts of Congress relating to the

19  removal of this action.

20        13.  Therefore, diversity of citizenship exists under CAFA because at least

21  one member of the putative class is, and indeed Plaintiff is, a citizen of a state

22  different than Tesla.  28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal

23  diversity" under which "any member of a class of plaintiffs is a citizen of a State

24  different from any Defendant").

---

[3] Tesla's Form 10-Q for the quarterly period ended September 30, 2024, which is a public document and publicly accessible through the United States Securities and Exchange Commission's website, lists Texas as Tesla's State of Incorporation and 1 Tesla Road, Austin, Texas as Tesla's principal executive offices: https://ir.tesla.com/_flysystem/s3/sec/000162828024043486/tsla-20240930-gen.pdf

### A. The Putative Class Has More Than 100 Members.

14. The FAC alleges claims on behalf of a class defined as "all current and former non-exempt employees employed by Defendants in the State of California during the four (4) years prior to the filing of this class action until class certification." (Ex. A, FAC ¶ 1).

15. Based on available data, Tesla is informed and believes that it employed more than 50,000 non-exempt employees in California during the four years preceding the initial complaint's filing on August 6, 2024. Thus, the putative class contains more than 100 members.

### A. The Amount in Controversy Exceeds $5,000,000.[4]

16. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Because Plaintiff does not expressly plead a specific amount of class damages, Tesla need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). Tesla's burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014). A removing party seeking to invoke CAFA jurisdiction "need

---

[4] This Notice of Removal addresses the nature and amount of damages that the FAC places in controversy. Tesla refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Tesla maintains that each of Plaintiff's claims lack merit, and that Tesla is not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the FAC or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Tesla's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In addition, Tesla denies that this case is suitable for class treatment.

include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554; *see also Jauregui v. Roadrunner Transportation Services, Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's remand to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal, and concluding that "[the defendant's] assumptions regarding the number of affected class members and the violation rate were reasonable for the various relevant claims.")

17. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted). *See also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy."). The ultimate inquiry is what amount a complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy"). *See also Jauregui*, 28 F.4th at 993 ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved.")

18. Under *Dart Cherokee*, a removing defendant does not need to submit evidence supporting its removal allegations. *Salter v. Quality Carriers, Inc.*, 974

F.3d 959, 964 (9th Cir. 2020) ("a removing defendant's notice of removal **need not contain evidentiary submissions** but only plausible allegations of jurisdictional elements.") (internal quotations omitted) (emphasis added).  The removal allegations "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019)).  Where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Id.* at *3.  As detailed below, Tesla plausibly alleges that the amount in controversy exceeds $5 million based on Plaintiff's sweeping allegations, and that the Court has jurisdiction pursuant to CAFA.  When the claims of the putative class members in the present case are aggregated, their claims put into controversy over $5 million in potential damages.  28 U.S.C. § 1332(d)(2).

19.     Although Tesla denies Plaintiff's factual allegations and denies that Plaintiff nor the class nor subclasses he seeks to represent are entitled to the relief sought in the FAC, Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[5]

---

[5] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's FAC.  Tesla's references to specific damage amounts and citation to comparable cases are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum.  Tesla maintains that each of Plaintiff's claims is without merit and that Tesla is not liable to Plaintiff or any putative class member.  Tesla expressly denies that Plaintiff or any putative class member are entitled to recover any of the penalties sought in the FAC.  In addition, Tesla denies that liability or damages can be established on a class-wide basis.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the FAC or otherwise.  "The amount in controversy is simply an estimate of the total amount in dispute, not a

20. As explained above, Plaintiff seeks to represent a putative class of more than 50,000 current and former employees. Tesla has reviewed certain data concerning the putative class that Plaintiff seeks to represent. Based on the allegations in the FAC, Plaintiff has put well over $5 million in controversy as set forth below, and CAFA removal is appropriate.

### 1. Plaintiff's Ninth Cause of Action for Failure to Pay Waiting Time Penalties Places at Least $50,400,000 in Controversy.

21. The FAC alleges that "[d]uring the relevant time period, Defendants willfully failed to pay Plaintiff and Waiting Time Subclass Members all their earned wages upon termination including, but not limited to, minimum, regular, overtime, and double time compensation, and premium compensation either at the time of discharge or within 72 hours of leaving Defendant'[s] employ." (FAC ¶ 159). It further alleges that "[i]n violation of the Labor Code, Plaintiff and Waiting Time Class Members did not receive payment of all wages owed upon separation within the permissible time period due to, *inter alia,* Defendants' failure to pay all wages and meal and rest period premiums to Plaintiff and Class Members." (*Id.* at ¶ 70). Accordingly, Plaintiff alleges, "[a]s a result of Defendants' failure to timely pay all wages owed to Plaintiff and Waiting Time Subclass Members in accordance with Labor Code §§ 201, 202 and 203, Plaintiff and Waiting Time Subclass Members are entitled to recover waiting time penalties, prejudgment interest, attorneys' fees, and costs in amounts that will be established at trial." (*Id.* at ¶ 160).

22. The "Waiting Time Subclass" is defined in the FAC as "All Class Members who separated from their employment with Defendants and who were not paid waiting time penalties at any time within three years prior to the filing of this action to the date of class certification." During the three-year statute of limitations period applicable to a Section 203 claim, Tesla is informed and believes that more

---

prospective assessment of [Tesla's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

than 30,000 non-exempt employees in California separated their employment with Tesla from August 6, 2021 to August 6, 2024, and that more than 30,000 of these employees were not paid waiting time penalties in connection with their separation. The FAC alleges that "Defendants willfully failed to pay Plaintiff and Waiting Time Subclass Members all their earned wages upon termination including, but not limited to, minimum, regular, overtime, and double time compensation, and premium compensation either at the time of discharge or within 72 hours of leaving Defendant'[s] employ." (FAC, ¶ 159). The FAC does not allege that these amounts have been paid, but rather seeks them as damages for all alleged Waiting Time Subclass Members. Based on Plaintiff's allegations, the FAC is seeking waiting time penalties as to all Waiting Time Subclass Members and Defendant can therefore assume a 100% violation rate for waiting time penalties to calculate the amount in controversy. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."). *See also Jauregui*, 28 F.4th at 994 ("But it was not unreasonable for [defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty.") (emphasis in original); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018) (holding that plaintiffs' "allegations of unpaid wages, are implicit allegations of maximum damages for waiting time penalties"); *Crummie v. Certified Safety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) ("Crummie's theory. . . is that putative class members were owed (and are still owed) pay for overtime and missed meal and rest breaks, even if their final paychecks were otherwise timely delivered. Thus, it is completely reasonable to assume waiting time penalties accrued to the thirty-day limit because of those unpaid sums.").

23. Using the lowest state minimum wage rate during the period identified above of $14.00, and conservatively assuming that putative class members only worked four-hour shifts (although many were in fact full-time) the FAC puts in controversy Labor Code Section 203 waiting time penalties of at least $1,680 per terminated employee ($14.00 x 4 hours per day x 30 days), or at least **$50,400,000** in the aggregate ($1,680 x 30,000 employees).

### 2. Plaintiff's Eighth Cause of Action for Failure to Provide Accurate Itemized Wage Statements Places At Least $77,169,900 in Controversy.

24. The FAC alleges that "[d]uring the relevant time period, [Tesla] knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members. The deficiencies include, among other things, Defendants' failure to correctly state the gross and net wages earned, the total hours worked, all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate." (FAC, ¶ 150).

25. Plaintiff alleges that " Labor Code § 226(e)(1) authorizes an employee suffering injury as a result of a knowing and intentional failure by an employer to provide an accurate itemized wage statement to recover the greater of all actual damages or $50 for the initial pay violation and $100 for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee, in addition to an award of costs and attorneys' fees." (FAC, ¶ 149.)  Plaintiff further alleges that "[a]s a result of Defendants' knowing and intentional failure to comply with California Labor Code § 226(a), Plaintiff and Class Members have suffered an injury, and the exact amount of damages and/or penalties is all in an amount to be shown according to proof at trial." (*Id.* at ¶ 152).

26. Labor Code section 226(e) provides that an employee is entitled to recover the greater of all actual damages or $50 for the initial violation and $100 for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11                                                    NOTICE OF REMOVAL

DB2/ 49767918

each alleged subsequent violation, up to a maximum of $4,000, plus costs and reasonable attorneys' fees, if an employer knowingly and intentionally fails to provide an accurate, itemized wage statement. Cal. Lab. Code § 226(e). Thus, according to Plaintiff's theory, he and the putative "Class Members" would be entitled to $50 for the first wage statement violation, plus $100 for each subsequent violation, for every pay period during the applicable limitations period where they allegedly did not receive an accurate wage statement, subject to a maximum award of $4,000 per employee. There is a one-year statute of limitations on this claim. See Cal. Code Civ. Proc. § 340(a); *Martinez v. Morgan Stanley & Co. Inc.*, 2010 WL 3123175, *6 (S.D. Cal. August 9, 2010).

27. Based on the allegations in the Complaint, it is reasonable to assume for removal purposes a 100% violation rate on Plaintiff's wage statement claim. *Cortez v. United Nat. Foods, Inc.*, 2019 WL 955001, at *5 (N.D. Cal. Feb. 27, 2019) ("The allegations here directly support Defendants' use of a 100% violation rate, given that Plaintiff alleges that all employees received defective statements."); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) ("It is not unreasonable to assume that, with this many violations alleged, every one of the wage statements issued during the class period could potentially have been noncompliant."). Here, the FAC defines the "Class" as " All current and former non-exempt employees employed by Defendants in the State of California within four years prior to the filing of this action to the date of class certification." (FAC, ¶ 40).

28. According to Defendant's records, Defendant is informed and believes that it employed more than 30,000 non-exempt employees in California since August 6, 2023.  During the period since August 6, Defendant paid its non-exempt employees in California on a bi-weekly basis.  According to Defendant's records, Defendant is informed and believes that from August 6, 2023, until January 9, 2025,  there were a total of approximately 786,699 pay periods with wage

statements issued to non-exempt employees in California. Assuming Plaintiff seeks $50 for each employee's initial wage statement and $100 for each employee's subsequent wage statement, Defendant calculates that Plaintiff's wage statement claim has placed approximately another $77,169,900 in controversy [(30,000 initial pay period x $50) + (756,699 subsequent pay periods x $100 for alleged subsequent violations)].

### 3. The Amount in Controversy Exceeds $5 Million.

29. Aggregating the figures above for just these two causes of action, Plaintiff's alleged amount in controversy is at least **$127,569,900** ($50,400,000 + $77,169,900) based on the allegations in the claims discussed above. Thus, the CAFA $5 million requirement is satisfied based on these claims alone, even without the need to assess the value of Plaintiff's First Cause of Action (failure to pay minimum and overtime wages), Second Cause of Action (failure to provide meal period), Third Cause of Action (failure to provide rest period), Fourth Cause of Action (failure to provide recovery periods), Fifth Cause of Action (failure to produce personnel records), Sixth Cause of Action (failure to produce signed documents), Seventh Cause of Action (failure to implement heat prevention & maintain legal temperature controls), Tenth Cause of Action (failure to reimburse necessary business expenditures), Eleventh Cause of Action (claim for violation of California's quota laws), Twelfth Cause of Action (claim for violation of the WARN Act), Thirteenth Cause of Action (claim for violation of California Business & Professions Code), and Fourteenth Cause of Action (claim for penalties under PAGA).

### 4. Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.

30. Plaintiff seeks to recover attorneys' fees under various provisions of the Labor Code, including section 226. (Ex. A, FAC ¶¶ 6, 49, 72, 88, 102, 111,

117, 122, 131, 145, 149, 153, 160, 165, 170, 195, 209; Prayer for Relief, ¶ 19). Future attorneys' fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226. *See Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 793–94 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA. *See Anderson*, 2020 WL 7779015, at *4; *see also* Moreno v. Pretium Packaging, L.L.C., No. 8:19-CV-02500-SB-DFM, 2021 WL 3673845, at *2 (C.D. Cal. Aug. 6, 2021) (granting final approval of 33% fee award for plaintiffs' firm Wilshire Law Firm in wage-and-hour class action).

31. Although Tesla denies Plaintiff's claim for attorneys' fees, inclusion of potential future attorneys' fees just as to Plaintiff's wage statement claim for purposes of removal adds another $19,292,475 in controversy (25% of $77,169,900), bringing the total amount in controversy to at least **$146,862,375.**

32. Therefore, although Tesla has plausibly alleged that the amount in controversy without attorneys' fees exceeds $5,000,000, the inclusion of attorneys' fees as allowed by Ninth Circuit law further increases the amount in controversy above the minimum threshold for CAFA jurisdiction.

**IV.   VENUE**

33. This action was originally filed in the Superior Court for the County of Los Angeles. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

**V.   NOTICE**

34. Tesla will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI. CONCLUSION

35. Based on the foregoing, Tesla requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Tesla respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: January 10, 2025                MORGAN, LEWIS & BOCKIUS LLP

By */s/* John S. Battenfeld
John S. Battenfeld
Julianne G. Park
Attorneys for Defendant
TESLA, INC.