Jose Garay (SBN 200494)
**JOSE GARAY, APLC**
249 E Ocean Blvd # 814
Long Beach, CA 90802
Telephone: (949) 208-3400
E-mail: jose@garaylaw.com

Attorney for Plaintiff, Abraham Garcia

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/06/2024 1:34 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

ABRAHAM GARCIA, individually, on behalf of himself and others similarly situated,

Plaintiff,

vs.

TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKOWN) AND DOES 1 TO 50,

Defendant.

Case No. ___24STCV19700___

### CLASS ACTION COMPLAINT

1.  Failure to Pay All Wages Including Minimum and Overtime Wages in Violation of Labor Code §§ 204, 206, 226.2, 226.8, 227.3, 510, 1182.12, 1194, 1194.2, 1197;
2.  Failure to Provide Meal Periods in Violation of Labor Code §§ 226.7, 512 and Wage Orders § 11;
3.  Failure to Provide Periods in Violation of Labor Code §§ 226.7 and Wage Order § 12;
4.  Failure to Provide Recovery Periods in Violation of Labor Code §§ 226.7;
5.  Failure to Provide Accurate Itemized Wage Statements in Violation of Labor Code §§ 226, 226.3, 1174;
6.  Failure to Pay Waiting Time Penalties in Violation of Labor Code §§ 201, 202, 203;
7.  Failure to Reimburse for Necessary Business Expenditures; in Violation of Labor Code § 2802;
8.  Violation of California's Quota Laws, Labor Code §§ 2100, *et seq.*;
9.  Violation of WARN Act, Labor Code § 1400 *et. seq*; and,
10. Unfair Business Practices in Violation of Cal. Bus. & Prof Code §§ 17200, *et seq.*

### DEMAND FOR JURY TRIAL

-1-
CLASS ACTION COMPLAINT

1   Plaintiff, Abraham Garcia, (hereinafter, "Plaintiff"), individually, and on behalf of herself and all

2   others similarly situated, brings this class action complaint ("Complaint") against defendant,

3   TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKOWN) and Does 1 through 50

4   (collectively, "Defendants" or TESLA MOTORS, INC."), and alleges as follows:

5                                  **INTRODUCTION**

6        1.      This is a class action brought on behalf of Plaintiff and the Class he seeks to represent

7   ("Class" or "Class Members"). The Class consists of all current and former non-exempt employees

8   employed by Defendants in the State of California during the four (4) years prior to the filing of this

9   class action until class certification ("Class Period").  Plaintiff reserves the right to amend this

10  complaint to reflect a different Class Period as further discovery is conducted.

11       2.      Plaintiff, individually and on behalf of the Class Members, seeks relief against

12  Defendants due to Defendants' violations of the applicable Industrial Welfare Commission ("IWC")

13  Wage Orders, Code of Regulations, and Labor Code, including: (1) failure to pay all wages

14  (including minimum, regular, overtime, and double time compensation); (2) failure to provide meal

15  periods or compensation in lieu thereof; (3) failure to authorize or permit rest breaks or provide

16  compensation in lieu thereof; (4) failure to authorize or permit rest breaks or provide compensation

17  in lieu thereof; (5) failure to authorize or permit or provide recovery periods or provide

18  compensation in lieu thereof; (6) failure to reimburse business expenses; (7) failure to provide

19  accurate itemized wage statements; (8) failure to pay all wages due upon separation of employment;

20  (8) violations of Labor Code section 2100 *et. seq*., California's quota laws; (9) Violation of

21  California WARN Act, and (10) Violation of California's UCL.

22       3.      Plaintiff and the other similarly situated employees were employees of Defendant

23  TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKNOWN), pursuant to the WARN Act's

24  single employer rule.  Plaintiff and other similarly situated employees of Defendant were terminated

25  as part of, or because of a mass layoff and plant closings, under federal and California law

26  (hereinafter, "Plant Closings"), ordered by the Defendant on or about April 14, 2024, and thereafter.

27  Defendant violated the WARN Act and the California WARN Act by failing to give Plaintiff and

28  other similarly situated employees of the Defendant at least 60 days' advance written notice of

CLASS ACTION COMPLAINT

termination, as required. Consequently, Plaintiff and other similarly situated employees of Defendant are entitled under the WARN Act to recover from Defendant their wages and ERISA benefits for 60 days, none of which has been paid.

4.      At all relevant times herein, Defendants have consistently maintained and enforced against Plaintiff and Class Members the unlawful practices and policies set forth herein.

5.      Plaintiff seeks injunctive and monetary relief against Defendants on behalf of herself and the putative Class to recover, among other things, unpaid wages, liquidated damages, restitution, interest, attorneys' fees, costs, and penalties pursuant to Labor Code sections 201-204, 206, 208, 226, 226.7, 227.3, 351, 510, 512, 1182.12, 1194, 1194.2, 1197, 1198, 2100-2112, 2802, and Code of Civil Procedure section 1021.5.

**PARTIES**

6.      Plaintiff is a California citizen and resides in Los Angeles County, California. Defendants employed Plaintiff as a non-exempt, hourly employee during the Class Period.  Plaintiff, an adult resident and citizen of Los Angeles County, California, was employed by TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKNOWN), and worked in Los Angeles County, California until his termination on or about April 15, 202 Pursuant to the California WARN Act, California Labor Code § 1400, *et seq.*, "employee" is defined as any person employed for at least six months of the twelve months preceding the date on which notice is required. Plaintiff and other Class Members were employed by Defendants for at least six months of the twelve months preceding the date on which the notice referred to herein was required. Plaintiff was employed as a "warehouse associate" who was responsible for moving products and goods within and throughout Defendant's warehouse facility.

7.      Defendant TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKOWN) is incorporated in Delaware.  TESLA MOTORS, INC. conducts business throughout California, including in LOS ANGELES County, among other locations.  TESLA MOTORS, INC. owns and manufacturing and production facilities, operates delivery, warehouse, and servicing centers throughout California, including the center in which it employed Plaintiff and is a covered employer pursuant to Labor Code §§ 2100 *et seq.*

-3-
CLASS ACTION COMPLAINT

8.      Doe Defendants 1-50 providing staffing and placement services for TESLA MOTORS, INC. are joint and direct employers and jointly and severally liable to Plaintiff and Class Members and will be amended into the lawsuit once their identity is discovered. These entities also conduct business throughout California, including in LOS ANGELES County, among other locations and are "*covered employers*" pursuant to Labor Code §§ 2100 *et seq.*

9.      DOES 1 through 50, are sued under fictitious names pursuant to Code of Civil Procedure section 474 because Plaintiff does not know their true names or capacities.  Plaintiff will seek leave of court to amend this Complaint and serve such fictitiously named Defendants when their names and capacities are ascertained.  Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 50 are or were the partners, joint employers, agents, owners, shareholders, managers, or employees of TESLA MOTORS, INC. at all times relevant to this Complaint.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, section 10 and Code of Civil Procedure section 410.10.  All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

11.      Plaintiff brings this action pursuant to the Code of Civil Procedure section 382. The relief and monetary damages, restitution, penalties, and other amounts Plaintiff seeks exceed the minimal jurisdictional limits of the Superior Court.

12.      This Court has personal jurisdiction over Defendants because TESLA MOTORS, INC. and. maintains a principal place of business is in California and Defendants, on information and belief, have sufficient minimum contacts in Los Angeles California, or otherwise intentionally avail herself of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

13.      Venue is proper in this Court under Code of Civil Procedure sections 395(a) and 395.5 because, on information and belief, Defendants reside, transact business, maintain offices, and/or have an agent or agents in this county, and the acts and omissions alleged herein took place in this county.

-4-
CLASS ACTION COMPLAINT

14. This Court is an appropriate venue for this action under Code of Civil Procedure sections 395 and 395.5 because the acts that give rise to the causes of action alleged herein occurred in the County of LOS ANGELES and throughout the State of California. Plaintiff hereby designates the County of LOS ANGELES, State of California as the place of proper venue. This Court has personal jurisdiction over Defendant because Defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial portion of the acts, omissions, events, and transactions constituting the causes of action alleged herein occurred within the State of California, and more specifically, in the County of LOS ANGELES. (See Code of Civil Procedure section 410.10).

15. This Court has subject matter jurisdiction over the causes of action alleged in this Complaint because the Court is a court of general subject matter jurisdiction and is not otherwise excluded from exercising subject matter jurisdiction over said causes of action.

16. The State of California, Los Angeles County, has jurisdiction in this matter because the individual claims are under the seventy-five thousand dollar ($75,000.00) individual jurisdictional threshold and the five million dollar ($5,000,000.00) aggregate jurisdictional threshold for federal court diversity jurisdiction. Further, there is no federal question at issue as the issues herein are based solely on the California Labor Code, Industrial Welfare Commission Wage Orders, Code of Civil Procedure and Rules of Court. Thus, the State of California, Los Angeles Superior Court maintains the appropriate jurisdiction to hear this matter.

17. Defendant has in prior lawsuits removed state lawsuits to federal court and thereafter stipulated to remand the same lawsuits to state court as such has waived federal jurisdiction.

## **ARBITRATION**

18. Plaintiff's and Class Members' claims as alleged herein are not subject to arbitration agreements. PAGA or Class Action claims waivers are not enforceable against employees engaged in interstate commerce as transportation workers. Defendant's arbitration agreement, if any, does not apply to this matter for the following reasons: 1) Plaintiff falls with the Transportation Workers Exemption and the FAA does not apply, and 2) Plaintiff's PAGA claims for civil penalties are not

CLASS ACTION COMPLAINT

1  a Covered Claims under Defendant's Arbitration Agreement, and 3) as the FAA does not apply to

2  the parties, Defendant's agreement is unenforceable should it exist.

3      19.    Although the FAA applies broadly and requires enforcement of certain arbitration

4  agreements according to their terms, under the transportation worker exemption, "contracts of

5  employment with seamen, railroad employees, or any other class of workers engaged in foreign or

6  interstate commerce" are exempt from the FAA. 9 U.S.C. § 1; *Ortiz v. Randstad InHouse Services,*

7  *LLC* (9th Cir. 2024) 95 F.4th 1152. The U.S. Supreme Court recently addressed the transportation

8  workers exemption in *Southwest Airlines Co. v. Saxon* (2022), 596 U.S. 450, 456. The U.S.

9  Supreme Court engaged in a two-step analysis to determine whether an employee qualified under

10 the transportation workers exemption. *Id*. at 455-459.  First, the Court "defined the relevant class

11 of workers. *Id*. at 455. Second, the Court then "determine whether that class of workers is 'engaged

12 in foreign or interstate commerce.'" *Id*.

13     20.    In this case, Plaintiff and putative Class Members were and are of the class of

14 workers that engaged in foreign or interstate commerce. Plaintiff performed an essential function

15 at Defendant's distribution centers, logistic facilities, fulfillment centers, and/or warehouses in Los

16 Angeles. Defendant ships products to locations throughout Los Angeles County and throughout the

17 country. Plaintiff and/or Class Members were responsible for tasks and duties essential critical to

18 Defendant business.

19     21.    Plaintiff and Class Members worked at the Defendant's warehouse locations, which

20 necessarily received and shipped goods and products, through both foreign and interstate streams

21 of commerce.  Plaintiff and putative Class Members were and are a class of workers who "played

22 a direct and 'necessary role in the free flow of goods' across borders" and "actively engaged in

23 transportation'" of such goods. *Saxon*, 596 U.S. at 458 (quoting *Circuit City Stores, Inc. v. Adams*,

24 532 U.S. 105, 121 (2001). In this case, the relevant goods and products were still moving in

25 interstate commerce when Plaintiff and putative Class Members interacted with them, and Plaintiff

26 played a necessary part in facilitating their continued movement.

27     22.    As Plaintiff was "actively engaged" and "intimately involved with" the interstate

28 commerce of good and products, [Plaintiff] is an exempt transportation worker under the FAA.

CLASS ACTION COMPLAINT

1    Plaintiff was employed as a "warehouse associate." His duties involved, among other activating

2    related to interstate commerce, processing orders in shipping and receiving, stocking shelves,

3    moving materials within the warehouse for transportation across state lines, loading and unloading,

4    and driving a forklift carrying products intended for interstate shipping and receiving. As such, the

5    FAA does not apply to the arbitration agreement, if one exists.

6                                   **CLASS ALLEGATIONS**

7            23.    Plaintiff brings this class action pursuant to Code of Civil Procedure section 382 on

8    behalf of herself and all others similarly situated who were injured by Defendants' violations of the

9    Labor Code, Business and Professions Code sections 17200, *et seq.*, and IWC Wage Orders during

10   the Class Period.

11           24.    Plaintiff' and Class Members' job duties, at TESLA MOTORS, INC. included a

12   sundry of warehouse duties subject to production targets and quotas. Under Defendants' quotas,

13   Plaintiff and putative Class Members are assigned or required to perform at a specified productivity

14   speed, or perform a quantified number of tasks, or to handle or produce a quantified amount of

15   material, within a defined time period and under which employees suffer adverse employment

16   actions if they fail to complete the performance standard for TESLA MOTORS, INC..

17           25.    Plaintiff is informed and believes, and thereon alleges that at all times hereinafter

18   mentioned, Defendants were and are subject to the Labor Code and IWC Wage Orders as employers,

19   whose employees were and are engaged throughout this county and the State of California.

20           26.    Plaintiff is informed and believes, and thereon alleges, that each Defendant acted in

21   all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme,

22   business plan, or policy in all respects pertinent hereto, and the acts of each Defendant are legally

23   attributable to the other Defendant.

24           27.    Plaintiff is informed and believes, and thereon alleges, that each of the Defendants

25   directly or indirectly, through agents or other persons or entities, employed or otherwise exercised

26   control over the wages, hours, and working conditions of Plaintiff and the Class Members.

27   Furthermore, each of the Defendants in all respects acted as the employer and/or joint employer of

28   Plaintiff and the Class Members.

-7-

**CLASS ACTION COMPLAINT**

28.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, the Defendants, acting as the agent, alter ego, agent, servant, joint venturer, co-conspirator, and/or partner for the other, within a common enterprise and legal authority to act on the other's behalf.   The acts of any and all Defendants were in accordance with, and represent, the official policy of TESLA MOTORS, INC.

29.     At all relevant times, Defendants, and each of them, acted within the scope of such agency or employment, or ratified each and every act or omission complained of herein.   At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendant in proximately causing the damages herein alleged.

30.     Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, and/or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

31.     Plaintiff' proposed Class consists of and is defined as follows:

Class

All current and former non-exempt employees employed by Defendants in the State of California within four years prior to the filing of this action to the date of class certification.

Recovery Period Subclass

All persons who are employed or have been employed by Defendant in the State of California who, within the four years of the filing of this Complaint, have worked as non-exempt employees and were not permitted or provided recovery periods or paid compensation in lieu thereof.

Meal Period Subclass

All persons who are employed or have been employed by Defendant in the State of California who, within the four years of the filing of this Complaint, have worked as non-exempt employees and were not permitted or provided meal periods or paid compensation in lieu thereof.

Rest Period Subclass

CLASS ACTION COMPLAINT

All persons who are employed or have been employed by Defendant in the State of California who, within the four years of the filing of this Complaint, have worked as non-exempt employees and were not permitted or provided rest periods or paid compensation in lieu thereof.

Personnel File Subclass

All persons who are employed or have been employed by Defendants in the State of California who, for the four years prior to the filing of this class action to the present have worked as non-exempt employees and have requested their personnel file and were denied and/or not provided their personnel file pursuant to California law.

Waiting Time Subclass

All Class Members who separated from their employment with Defendants and who were not paid waiting time penalties at any time within three years prior to the filing of this action to the date of class certification.

Plaintiff also seeks to certify the following Subclass:

Quota Subclass

All current and former non-exempt employees employed by Defendants in the State of California since January 1, 2022, who were subject to quotas in violation of Labor Code sections 2100-2112.

WARN Subclass

All of Defendant's employees who were terminated from employment on or around April 14, 2024, as part of a mass layoff or plant closing.

32.    Members of the Class and Subclasses described above will be collectively referred to as "Class Members."

33.    Plaintiff reserves the right to modify or re-define the Class or Subclass(es), establish additional subclasses, or modify or re-define any class or subclass definition as appropriate based on investigation, discovery, and specific theories of liability.

34.    There is a well-defined community of interest in this litigation and the proposed Class and Subclass are readily ascertainable.

CLASS ACTION COMPLAINT

35.     **Commonality:** This action has been brought and may properly be maintained as a class action under the California Code of Civil Procedure section 382 because there are common questions of law and fact as to the Class Members that predominate over any questions affecting only individual members including, but not limited to, the following:

(a)     Whether Defendant violated California's WARN Act;

(b)     Whether Defendants' practices and policies violated Labor Code sections 2100-2112 for requiring warehouse employees to meet excessive and unlawful quotas thereby preventing them from complying with rest, recovery and meal periods, their ability to use restroom facilities and exposed them to safety and OSHA violations;

(c)     Whether Defendants paid Plaintiff and Class Members all non-discretionary bonuses and wages for all hours worked, including the correct legal regular wage, minimum wage, and overtime and double overtime rate;

(d)     Whether Defendants paid Plaintiff and Class Members the correct legal wages for all hours worked, including the correct legal minimum wage, overtime and double overtime rate, premium wages, sick pay, and vacation pay when Defendants paid bonuses;

(e)     Whether Defendants pay or vest sick pay wages in accordance with California law;

(f)     Whether Defendants violated the vacation pay law in California pursuant to Labor Code section 227.3;

(g)     Whether Defendants violated California's reporting time pay regulations;

(h)     Whether Defendants' rounding policy and practice favored Defendants by systematically undercompensating Plaintiff and Class Members;

(i)     Whether Defendants compensated Plaintiff and Class Members for time spent during rest periods and/or meal periods while under the control of Defendants during split shifts, meal periods, rest periods, recovery periods and other non-productive time;

(j)     Whether Defendants paid Plaintiff and Class Members the legal split-shift premium;

(k)     Whether Defendants required Plaintiff and Class Members to work off-the-clock without compensation;

CLASS ACTION COMPLAINT

(l)     Whether Defendants required Plaintiff and Class Members to incur business expenses without reimbursement;

(m)    Whether Defendants authorized and permitted Plaintiff and Class Members legally compliant meal periods or paid compensation in lieu thereof;

(n)     Whether Defendants authorized and permitted Plaintiff and Class Members legally compliant rest periods or paid compensation in lieu thereof;

(o)     Whether Defendants authorized and permitted Plaintiff and Class Members legally compliant recovery periods or paid compensation in lieu thereof;

(p)     Whether Defendants were compliant with California law with respect to heat illness prevention and cooling down provisions;

(q)     Whether Defendants failed to provide Plaintiff and Class Members with accurate itemized wage statements;

(r)     Whether Defendants failed to timely pay the Plaintiff and Class Members all wages due immediately upon termination or within 72 hours of resignation;

(s)     Whether Defendants' conduct was willful or reckless; and

(t)     Whether Defendants engaged in unfair business practices in violation of Business and Professions Code sections 17200, *et seq.*

36.     There is a well-defined community of interest. Plaintiff and Class Members have suffered common injuries as a result of Defendants' systemic employment policies and practices. Looking to Defendants' employment policies and practices, the Court can adjudicate the lawfulness of those policies and practices on a class-wide basis, according to proof, and issue an award to Plaintiff and Class Members accordingly.  Answers to common questions raised in this Complaint will advance resolution of each individual Class Member's claims.

37.     **Numerosity**: The Class Members are so numerous that joinder of all members is impracticable.  Although the members of the entire Class and Subclasses are unknown to Plaintiff at this time, on information and belief, the class is estimated to be greater than 500 individuals.

38.     **Ascertainability**: The identities of the Class Members are readily ascertainable by inspection of Defendants' employment and payroll records.

-11-

39.    **Typicality:** The claims (or defenses, if any) of Plaintiff are typical of the claims of the Class Members because Defendants' failure to comply with the provisions of California's wage and hour laws entitled each Class Member to similar pay, benefits, and other relief.  The injuries sustained by Plaintiff are also typical of the injuries sustained by Class Members because they arise out of and are caused by Defendants' common course of conduct as alleged herein.

40.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of all Class Members because it is in Plaintiff' best interest to prosecute the claims alleged herein to obtain full compensation and penalties due to Plaintiff and the Class Members. Plaintiff' attorneys, as proposed class counsel, are competent and experienced in litigating large employment class actions and versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred and, throughout the duration of this action, will continue to incur attorneys' fees and costs that have been and will be necessarily expended for the prosecution of this action for the substantial benefit of the Class Members.

41.    **Superiority:** The nature of this action makes use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared to separate lawsuits and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner for the entire Class and Subclasses at the same time.  If appropriate, this Court can, and is empowered to, fashion methods to efficiently manage this case as a class action.

42.    **Public Policy Considerations:** Employers in the State of California violate employment and labor laws every day.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means.  Class actions provide class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights while affording them privacy protections.

43.    It is the public policy of California to provide recovery periods and protect employees' safety and illness related to heat, humidity, and temperate related illnesses. The following article summarizes the intent of California law and policy:

*The California Occupational Safety and Health Standards Board voted to adopt on June 20, 2024 and indoor heat standard in California requiring considerable compliance obligations on employers. The new rule applies to all indoor work areas where the temperature reaches 82 degrees, particularly for warehouses, distribution centers, restaurants, and manufacturing plants where indoor temperature cannot be readily controlled. The rule is expected to take effect on August 1, if the Office of Administrative Law expedites its review.*

***Workplace Requirements When Temperatures Rise to 82 Degrees:  T****he Board adopted the indoor heat rule back in March 2024.  The new rule includes a rigid compliance framework for employers with indoor work areas when the temperature reaches 82 degrees. Employers are required to comply by taking proactive steps to prevent indoor heat exhaustion and related illnesses and safety risk.*

***Develop a Written Heat Illness Prevention Plan:****  Employers must create and implement a written Indoor Heat Illness Prevention Plan that includes procedures for accessing water, acclimatization, cool-down areas, measuring the temperature and heat index, and emergency response measures.  The plan must be a tailored plan to the workplace conditions. In its [recently published FAQs](https://www.dir.ca.gov/dosh/heat-illness/Indoor-faq.html)[1] on the new rule, Cal/OSHA has emphasized that a Heat Illness Prevention Plan that "is little more than a restatement of the safety orders does not satisfy the standard; instead, it must be specific and customized to the employer's operations."*

***Provide Fresh, Pure, and Suitably Cool Drinking Water:****  Employers must provide employees with fresh, pure, and suitably cool drinking water, free of charge. The water must be located as close as practicable to the areas where employees are working and in indoor "cool-down areas." If there is no running water, employers must provide each employee with one quart of drinking water per hour. Employers also must encourage the frequent consumption of water during these high-heat*

---

[1] https://www.dir.ca.gov/dosh/heat-illness/Indoor-faq.html

CLASS ACTION COMPLAINT

conditions.

**Cool-Down Rest Periods:** *Employers must provide access to cool-down areas for* **_recovery_** *and meal and rest periods. Cool-down areas must be maintained at a temperature below 82 degrees, blocked from direct sunlight, and shielded from other high radiant heat sources, to the extent feasible.  Employers must allow and encourage employees to take a "preventative cool-down rest" in a cool-down area when employees feel the need to do so to protect herself from overheating. During the preventive cool-down rest, the employer must monitor the employees, encourage them to remain in the cool-down area, and must not order them back to work until any signs or symptoms of heat illness have been abated.* **_The rule makes clear that a preventative cool-down rest period "has the same meaning as 'recovery period' in Labor code subsection 226.7(a)_** *" – affording employees daily premium pay when they are not taking necessary recovery periods.*

**Acclimatization:** *Employers must closely observe employees who are newly assigned to high heat conditions for signs of heat stress during their first 14 days of work in these conditions, as well as any employees working during a heat wave where no effective engineering controls are in use.*

**Training Requirements:** *Employers must effectively train non-supervisory and supervisory employees on the risks of heat illness in the workplace. This training must include both environmental and personal risk factors for heat illness, and employer's procedures for complying with the indoor heat illness prevention regulation. Supervisors must receive additional training that includes requirements on responding to symptoms of heat illness and instructions on monitoring and responding to hot weather advisories.*

**Additional Requirements When Temperature Reaches 87 Degrees (or 82 Degrees Under Specific Conditions):** *Employers will need to follow additional requirements when the temperature or heat index reaches 87 degrees, or 82 degrees in places where employees wear clothing that restricts heat removal or work in a*

high radiant heat area. **Measuring and Recording Requirements:** *Employers must measure and record the temperature and heat index when it is first "reasonable to suspect" that it either reaches 87 degrees (or 82 degrees with employees wearing heat restrictive clothing or working in a high radiant heat area). Those initial steps must be taken where employees are working and when exposures are expected to be greatest.*

*Measurements must be taken again when they are reasonably expected to be at least 10 degrees above previous measurements. Employers must have procedures to actively involve employees and their union representatives, if applicable, in planning, conducting, and recording measurements, as well as in identifying and evaluating all other environmental risk factors for heat illness. Employers must maintain records of these measurements (including the time, date, and location of the measurement) for 12 months or until the net measurements are taken.*

*An employer has the option of not taking measurements, and instead, assuming a work area triggers the control measures—such as open areas susceptible to high humidity and temperature. In that event, the employer will need to follow the hierarchy of control measures.*

**Control Measures:** *The new rule requires employers to follow a hierarchy of control measures for reducing the risk of heat illness, including installing air conditioning systems and other building upgrades to reduce the risk of heat illness. Employers must use engineering controls to reduce the temperature and heat index to below 87 degrees Fahrenheit (or 82 degrees Fahrenheit where employees wear clothing that restricts heat removal or work in high radiant heat areas). Cal/OSHA cites the following examples of engineering controls that may be effective at minimizing the risk of heat illness: 1) Isolation of hot processes, 2) Isolation of employees from sources of heat, 3) Air conditioning, 4) Cool fans and cooling mist fans, 5) Evaporative coolers (swamp coolers), 6) Natural ventilation where the outdoor temperature/heat index is lower than the indoor*

CLASS ACTION COMPLAINT

*temperature/heat index, 7) Local exhaust ventilation, 8) Shielding from a radiant heat source, and/or 9) Insulation of hot surfaces. If engineering controls cannot bring the temperature and heat index below 87 (or 82 degrees when applicable), the next step requires employers to use administrative controls to minimize the risk of heat illness. But even then, employers must use engineering controls to reduce the temperature and heat index to the lowest feasible level.*

*Examples of administrative controls are acclimatizing employees, rotating employees, scheduling work earlier or later in the day, using work/rest schedules, reducing work intensity or speed, reducing work hours, changing required work clothing, and using relief workers.*

*Cal/OSHA has clarified through FAQs that whether engineering controls are feasible is a "fact-sensitive question" that includes an evaluation of the size, configuration and location of the indoor workspace, the sources of radiant heat, and the nature of the work being done by workers, among other things." Finally, if feasible engineering and administrative controls are insufficient, as a last resort, employers must use personal heat-protective equipment, such as water-cooled or air-cooled garments to minimize the risk of heat illness, as feasible.*

*As such, Cal/OSHA and the State of California mandate that recovery periods are provided to warehouse employees and preventative cooling down periods to avoid heat illness be implemented. Defendant as a matter of practice and policy refuses to comply with the law in favor of generating profits based on excessive production demands and other unlawful conduct as alleged herein.*

(Summarized and abridged from https://www.fisherphillips.com/en/news-insights/californias-new-indoor-heat-illness-rule-3-things-employers-need-to-know-now-to-prepare.html#:~:text=Significantly%2C%20the%20rule%20makes%20clear,not%20taking%20necessary%20recovery%20periods)

## **GENERAL ALLEGATIONS**

44.    **Background**: At all relevant times mentioned herein, Defendants employed Plaintiff

and other persons as non-exempt employees at numerous locations within California. Defendants employed Plaintiff in a non-exempt position during her employment and continues to employ non-exempt employees within California.

45.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers, employees, and other professionals who were knowledgeable about California's wage and hour laws, employment and personnel practices, and the requirements of California law.

46.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known they had a duty to compensate Plaintiff and Class Members, and Defendants had the financial ability to pay such compensation but willfully, knowingly, and intentionally failed to do so all in order to increase Defendants' profits. Furthermore, Plaintiff, is informed and believes, and thereon alleges that Defendants further implemented an unlawful policy and practice of alleging that employees were "stealing time" when they failed to clock-in or clock-out at the designated scheduled time when in fact Defendants use this strategy to terminate, reprimand, or retaliate against employees who complained that Defendants' quota and production demands were unreasonable and violated Labor Code sections 2100 – 2112.

47.    Plaintiff is informed and believe, and thereon alleges, that at all times Defendants tracked each and every workday and pay period, each shift, meal period, and rest period that was unlawful and in violation of California laws. Defendants were also fully cognizant that they failed to maintain the proper temperature controls as required by the IWC Wage Orders and California law, as such, exposing them to further health and OSHA safety requirements, prohibited under California quota laws and heat prevention illness laws.

48.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they imposed systematic quota and production demands on Plaintiff and Class Members in violation of employees' rights pursuant to Labor Code sections 2100 et. seq. TESLA MOTORS, INC. had a duty to ensure its production demands did not interfere or prevent Plaintiff' and Class Members' from complying with laws regarding meal periods, rest periods, use of bathroom facilities, and/or expose them to safety and Cal/OSHA hazards. TESLA MOTORS,

INC. willfully, knowingly, and intentionally failed to establish legally compliant quotas, placing profits above concern for employee safety.

49. **WARN Act:** Until their termination by Defendant, the Plaintiff and other similarly situated persons were employees of Defendant who worked at or reported to any facility, warehouse, logistics center, distribution center, manufacturing facility, and/or production facility and who were terminated as part of or as a reasonably foreseeable result of mass layoffs ordered and carried out by Defendant on or about April 14, 2024, and thereafter.

50. Upon information and belief, Defendant, as a single employer, owned and operated the Facility at all times relevant to this action.

51. On or about April 14, 2024, and thereafter, Defendant, as a single employer, ordered the termination of the Plaintiff's employment together with the termination of more than 10% of its employees who worked at or reported to the Facility as part of plant closings for which they were entitled to receive 60 days advance written notice.

52. Upon information and belief, at or about the time that Plaintiff was discharged on or about April 14, 2024, Defendant discharged approximately 14,000 other employees at the facility (the "other Similarly Situated Former Employees") without cause on their part.

53. On information and belief, Defendant exercised complete control over the labor decisions concerning Plaintiff and the Class Members' employment, including the decision to terminate their employment on or about April 14, 2024, respectively, and thereafter.

54. On information and belief, the decision to terminate Plaintiff and Class Members without providing proper WARN and California WARN notice was made by Defendant.

55. **Unpaid Wages**: Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Class Members were entitled to receive at least minimum, regular, overtime, and double times wages and that they were not receiving minimum, regular, overtime, and double time wages for all work that was required to be performed. Furthermore, Defendants knew that on January 1, 2022, they must provide Plaintiff and Class Members a written description of Defendants' quota production demands and failed to do so.

56. Plaintiff is informed and believes, and thereon alleges, that during the Class Period,

CLASS ACTION COMPLAINT

1  Plaintiff and Class Members regularly worked in excess of eight (8) hours in a workday and/or 40

2  hours in a workweek and/or in excess of 12 hours in a workday.  On information and belief,

3  Defendants did not accurately or appropriately compensate Plaintiff and Class Members for the

4  hours worked.

5        57.    Plaintiff is informed  and believes, and thereon alleges, that in violation of the Labor

6  Code and IWC Wage Orders, Defendants rounded, edited, and/or input the incorrect times for

7  Plaintiff' and Class Members' start times to reflect the scheduled start time instead of the actual start

8  time which should have included time spent arriving early to work, and performing other

9  preliminary duties and postliminary duties, and otherwise preparing for the workday.  Defendants

10  also rounded Plaintiff' and Class Members' end time to reflect the scheduled end time despite

11  working past those hours.  As such, Plaintiff and Class Members performed work off-the-clock

12  without compensation.  Plaintiff and Class Members were not paid a split shift premium and were

13  required to work shifts which were sufficiently long and were counted as "meal period" and "rest

14  periods."   While under the control of TESLA MOTORS, INC. they remained under the control of

15  Defendants and were not paid the split shift interval.  Defendants failed to compensate Plaintiff and

16  Class Members for all hours worked for work performed off-the-clock and for reporting time pay,

17  and overtime pay.  Defendants failed to pay the appropriate and correct legal wages for bonus pay

18  (i.e., premium pay, sick pay, vacation pay, overtime and double overtime) and vacation pay

19  according to California law.

20        58.    **Meal Period Violations**: Plaintiff is informed and believes, and thereon alleges, that

21  Defendants knew or should have known that Plaintiff and Class Members were entitled to receive a

22  timely, off-duty, uninterrupted 30-minute meal period for every five hours of work, or payment of

23  one additional hour of pay at their regular rate of pay when they did not receive a compliant meal

24  period.  Defendants enacted quotas that prevented Plaintiff and Class Members from taking lawful

25  meal periods.  During the Class Period, Plaintiff and Class Members regularly worked in excess of

26  five (5) and/or 10 hours per workday.  In violation of the Labor Code and IWC Wage Orders,

27  Plaintiff and Class Members did not receive compliant meal periods.  As such, Defendants failed to

28  provide all required meal periods, including second meal periods when Plaintiff and Class Members

CLASS ACTION COMPLAINT

worked in excess of 10 hours per workday. Even though Plaintiff and other Class Members were prevented from taking compliant meal periods, Defendants failed to provide them with premium pay for every non-compliant meal period. Defendants' quota requirements were unlawful and prevented employees from complying with California laws regarding meal periods.

59. **Rest Period Violations:** Defendants tracked and maintained a record of each and every rest period that violated California law including when Plaintiff or Class Members worked up to 10 - 12 hours in a workday. Defendants' quota demands were unreasonable and pressured Plaintiff and Class Members to work through rest periods. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Class Members were entitled to receive a ten-minute, off-duty, uninterrupted rest period for every four (4) hours worked, or major fraction thereof, or payment of one (1) additional hour of pay at their regular rate of pay when they were not permitted to take a compliant rest period. Defendants enacted quotas that prevented Plaintiff and Class Members from taking lawful rest periods. During the Class Period, Plaintiff and Class Members regularly worked in excess of four (4) hours or major fraction thereof. In violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members were not permitted to take compliant rest breaks, due to Defendants' unlawful policy and practice to favor production goals over employee rights. Consequently, Plaintiff and Class Members were not authorized or permitted to take rest breaks, including first, second, and third rest breaks. Defendants failed to pay Plaintiff and Class Members one additional hour of pay at their regular rate of pay when they did not receive a compliant rest break. On information and belief, Defendants also failed to provide recovery periods to employees. Defendants' quota requirements were unlawful and prevented employees from complying with California laws regarding recovery and rest periods.

60. **Recovery Period Violations:** Defendants violated California law by refusing to provide recovery periods and/or maintaining written policies that were distributed or disseminated to Plaintiff and putative Class Members. Defendants' quota demands were unreasonable and pressured Plaintiff and Class Members to work through recovery periods when needed or not to request them for fear of retaliation. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Class Members were entitled to receive

unlimited recovery periods of no less than 5 minutes for cooling down. Defendants enacted quotas that prevented Plaintiff and Class Members from taking lawful recovery periods. Consequently, Plaintiff and Class Members were not authorized or permitted to take recovery periods. Defendants failed to pay Plaintiff and Class Members one additional hour of pay at their regular rate of pay when they did not receive a compliant recovery period. Defendants' quota requirements were unlawful and prevented employees from complying with California laws regarding recovery periods.

61.   **Waiting Time Penalties:** Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Waiting Time Subclass Members who separated from their employment with Defendants during the statutory period were entitled to timely payment of all wages due. In violation of the Labor Code, Plaintiff and Waiting Time Class Members did not receive payment of all wages owed upon separation within the permissible time period due to, *inter alia*, Defendants' failure to pay all wages and meal and rest period premiums to Plaintiff and Class Members.

62.   **Wage Statement Violations:** Plaintiff is informed and believes, and thereon alleges that Defendant knew or should have known that Plaintiff and Class Members were entitled to receive complete and accurate wage statements and failed to abide by the requirements of Labor Code section 226 to pay and record each premium pay and meal and rest period violation which Defendants tracked and recorded. In violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members were not furnished with complete and accurate wage statements that show all of the information required by Labor Code section 226, including, but not limited to, the gross and net wages earned, the total hours worked, all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate.

63.   Labor Code § 226(f) and (g) state as follows:

> *(f) A failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth in subdivision (c) entitles the current or former employee or the Labor Commissioner to recover a seven-hundred-fifty-dollar ($750) penalty from the employer.*

-21-

CLASS ACTION COMPLAINT

*(h) An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees.*

64.    Labor Code § 226.7 states as follows:

*(a) As used in this section, "recovery period" means a cooldown period afforded an employee to prevent heat illness.*

*(b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.*

*(c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.*

*(d) A rest or recovery period mandated pursuant to a state law, including, but not limited to, an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, shall be counted as hours worked, for which there shall be no deduction from wages. This subdivision is declaratory of existing law.*

65.    The IWC Wage Orders require temperature to be maintained at comfortable levels. Section 15 of the Wage Orders states the following:

*15. **Temperature***

*(A) The temperature maintained in each work area shall provide reasonable*

*comfort consistent with industry-wide standards for the nature of the process and the work performed.*

*(B) If excessive heat or humidity is created by the work process, the employer shall take all feasible means to reduce such excessive heat or humidity to a degree providing reasonable comfort. Where the nature of the employment requires a temperature of less than 60 (degrees), a heated room shall be provided to which employees may retire for warmth, and such room shall be maintained at not less than 60 degrees.*

*(C) A temperature of not less than 68(degrees) shall be maintained in the toilet rooms, resting rooms, and change rooms during hours of use.*

*(D) Federal and State energy guidelines shall prevail over any conflicting provision of this section.*

66.     Pursuant to Section 15(b), Defendant has and have always had an affirmative duty to prevent and reduce excessive heat or humidity created by thew work environment, location, department or any other area of work that creates excessive hear and where employees are exposed to heat illness thereby requiring safety measures including, but not limited, to recovery periods. Defendant, however, has no written policy regarding preventative measures as required by California law or as required by Labor Code § 226.7.

### **FIRST CAUSE OF ACTION**

### **FAILURE TO PAY ALL WAGES**

### **(Plaintiff and the Class Against all Defendants)**

67.     Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

68.     Defendants failed to pay Plaintiff and Class Members all non-discretionary bonuses and wages (including minimum, regular, overtime, and double time wages) for all hours worked, including the correct legal minimum wage, overtime and double overtime rate.

69.    Defendants failed to pay Plaintiff and Class Members the correct legal wages for all hours worked, including the correct legal minimum wage, overtime and double overtime rate, premium wages, sick pay, and vacation pay when Defendants paid bonuses.

70.    Defendants failed to pay or vest sick pay wages in accordance with California law.

71.    Defendants failed to pay vacation pay law in California pursuant to Labor Code section 227.3.

72.    At all times herein relevant, Defendants had a duty to comply with Labor Code sections 204, 206, 227.3 ,510, 1182.12, 1194, 1194.2, 1197, 1198, 2802, the applicable IWC Wage Orders, and all applicable local minimum wage ordinances in effect throughout California.

73.    Labor Code section 204 and the IWC Wage Orders require timely payment of all wages owed on regularly scheduled paydays at least twice during each calendar month, on days designated in advance by the employer as the regular paydays. All wages earned in excess of the normal work period must be paid no later than the payday for the next regular payroll period.

74.    Labor Code section 206 provides that in case of a dispute over wages, the employer shall pay, without condition and promptly under the Labor Code all wages conceded due, leaving to the employee all remedies he/he is otherwise entitled to as to any balance claimed.

75.    The IWC Wage Orders define "hours worked" as "the time during which an employee is subject to the control of an employer and includes all time the employee is suffered or permitted to work, whether or not required to do so" including nonproductive time and legal wages when bonusses were paid.

76.    Defendants failed to pay the correct reporting time pay in accordance with California law.

77.    Labor Code section 510 and the IWC Wage Orders require that employers pay employees for all overtime hours at a rate of one and one-half times the employee's regular rate of pay for hours worked in excess of eight hours in one workday, 40 hours in one workweek, and after the first eight hours on the seventh consecutive workday in one work week.  Labor Code section 510 and the IWC Wage Orders further require that employers pay employees double their regular rate of pay for hours work in excess of 12 hours in a workday and after eight hours on the seventh

consecutive workday in one workweek. Labor Code section 510 requires payment of overtime wages at one- and one-half times the "regular rate of pay," including split shift premium pay, reporting time pay, sick pay, and vacation pay.

78.    Labor Code section 1182.12 sets forth the minimum hourly wage that must be paid to all employees in California for all hours worked. Local minimum wage ordinances may provide for higher minimum wage rates that must be paid to employees for all hours worked in those locales where each local ordinance is in effect.  Labor Code section 1197 affirms that it is unlawful to pay less than the state or local minimum wage, whichever is higher, for any hour of work.

79.    Labor Code section 1194 requires that employers pay employees at least the legal minimum wage rate for all hours worked, notwithstanding any agreement to work for a lesser wage. Labor Code section 1194 further authorizes any employee receiving less than the legal minimum wage applicable to the employee to recover in a civil action the unpaid balance of the full amount of wages, along with interest thereon, reasonable attorneys' fees and costs of suit.

80.    Labor Code section 1194.2 authorizes the recovery of liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon for unpaid wage violations.

81.    Labor Code section 1198 prohibits employers from employing for longer hours or less favorable conditions than those set forth in the Labor Code, IWC Wage Orders, or as otherwise set by the Labor Commissioner.

82.    In violation of California law, Defendants have knowingly and willfully refused to perform their obligations and compensate Plaintiff and Class Members for all wages earned as alleged above.

83.    Defendant' failure to pay Plaintiff and Class Members all earned minimum and regular wages in accordance with Labor Code sections 204, 206, 510, 1182.12, 1194, 1194.2, 1197, 1198, the applicable IWC Wage Orders, and all applicable local minimum wage ordinances in effect throughout California, Plaintiff and Class Members are entitled to recover the full amount of unpaid wages, liquidated damages, prejudgment interest, and statutory penalties, along with attorneys' fees and costs in amounts that will be established at trial.

## **SECOND CAUSE OF ACTION**

**MEAL PERIOD VIOLATIONS**

**(Plaintiff and the Class Against all Defendants)**

84.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

85.    At all relevant times, Defendants had a duty to comply with Labor Code sections 226.7 512, 2100-2112, and the applicable IWC Wage Orders.

86.    Labor Code section 512 and the IWC Wage Orders prohibit an employer from employing any person for a work period of more than 5 hours per day without providing the employee with a meal period of not less than 30 minutes (commencing before the employee's fifth hour of work), except that if the total work period per day is no more than 6 hours, the meal period may be waived by mutual consent of the employer and employee. A second meal period of not less than 30 minutes is required if an employee works more than 10 hours per day and must begin before the employee's tenth hour of work, except if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and employee, but only if the first meal period was not waived.  An employer must relieve an employee of all duties during meal periods.

87.    The applicable IWC Wage Orders state that "[u]nless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked."  Defendant required Plaintiff and putative Class Members to remain on call or engage in productive work during meal periods in violation of Labor Code § 2103.

88.    Labor Code section 226.7(b) and the IWC Wage Orders prohibit an employer from requiring any employee to work during a meal period mandated by any California statute, regulation, standard or order.  If an employer fails to provide an employee with a meal period in accordance with state law, Labor Code section 226.7(c) and the IWC Wage Orders require that the employer pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal period is noncompliant.

89.    During the Class Period, Plaintiff and Class Members did not receive compliant meal periods when working more than five (5) and/or 10 hours per day because Defendants provided only

about two (1) rest breaks per workweek. As such, Defendants failed to provide Plaintiff and Class Members with all required meal periods, including second meal periods.

90.    During the relevant time period, Defendants failed to pay Plaintiff and Class Members meal period premiums for noncompliant meal periods pursuant to Labor Code section 226.7(b) and the applicable IWC Wage Order.

91.    As a result of Defendants' failure to provide compliant meal periods and pay meal period premiums to Plaintiff and Class Members in accordance with the IWC Wage Orders and Labor Code sections 226.7 and 512, Plaintiff and Class Members suffered and continue to suffer a loss of wages and compensation.

92.    Because Plaintiff and Class Members were and/or are entitled to such meal periods or "premium pay" in lieu thereof, they are entitled to such payment per shift in an amount according to proof.  To the extent such unpaid premiums are deemed unpaid wages, Plaintiff will also seek pre- and post-judgment interest as provided by law at 10% per annum, in an amount according to proof.

93.    Pursuant to the Code of Civil Procedure section 1021.5, Plaintiff will also seek attorneys' fees and costs from Defendants in an amount subject to proof and approved by the Court.

### THIRD CAUSE OF ACTION

### REST PERIOD VIOLATIONS

### (Plaintiff and the Class Against all Defendants)

94.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

95.    At all relevant times, Defendants had a duty to comply with Labor Code sections 226.7, 2100 *et.seq.* and the applicable IWC Wage Orders.  Defendant required Plaintiff and putative Class Members to remain on call or engage in productive work during rest periods in violation of Labor Code § 2103.

96.    The IWC Wage Orders require employers to authorize and permit all employees to take 10-minute duty-free rest periods for each four hours worked, or major faction thereof.

97.    If an employer fails to provide an employee with a rest period in accordance with

CLASS ACTION COMPLAINT

California law, Labor Code section 226.7(c) and the IWC Wage Orders require that the employer pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the rest period is noncompliant.

98.     During the relevant time period, Defendants did not implement a compliant rest break policy or practice by providing only one (1) break per workday. As such, Defendants failed to provide Plaintiff and Class Members with all required rest periods, including second and third rest periods.

99.     During the relevant time period, Defendants failed to pay Plaintiff and Class Members rest period premiums for noncompliant rest periods pursuant to Labor Code section 226.7(b) and the applicable IWC Wage Order.

100.     As a result of Defendants' failure to provide compliant rest periods and pay rest period premiums to Plaintiff and Class Members in accordance with the IWC Wage Orders and Labor Code sections 226.7 and 516, Plaintiff and Class Members suffered and continue to suffer a loss of wages and compensation.

101.     Because Plaintiff and Class Members were and/or are entitled to such rest periods or "premium pay" in lieu thereof, they are entitled to such payment per shift in an amount according to proof.  To the extent such unpaid premiums are deemed unpaid wages, Plaintiff will also seek pre- and post-judgment interest as provided by law at 10% per annum, in an amount according to proof.

102.     Pursuant to the Code of Civil Procedure section 1021.5, Plaintiff will also seek attorneys' fees and costs from Defendants in an amount subject to proof and approved by the Court.

## FOURTH CAUSE OF ACTION

### FAILURE TO PROVIDE RECOVERY PERIODS

#### (Plaintiff and the Class Against all Defendants)

103.     Plaintiff realleges and incorporates by reference all preceding paragraphs herein, as if fully alleged.

104.     Labor Code § 226.7 provides that employers must authorize and permit non-exempt employees to take recovery periods.

105.    Labor Code § 226.7, subdivision (b), provides that if an employer fails to provide employees with recovery periods in accordance with this section, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the recovery period is not provided.

106.    Due to Defendants' uniform policies and practices, Plaintiff and Plaintiff Class consistently worked without receiving a duty-free, uninterrupted recovery period as required by the Labor Code.  Plaintiff and Plaintiff Class did not receive premium pay for the unprovided recovery periods.

107.    Defendant failed to take any affirmative action to reasonably make recovery periods available to Plaintiff and Plaintiff Class throughout the Class Period.

108.    Plaintiff and Plaintiff Class are entitled to damages in an amount equal to one (1) hour of wages per missed rest break, in a sum to be proven at trial. Pursuant to Labor Code § 218.5, Code of Civil Procedure section 1021.5, and any other provision of law, Plaintiff requests the court award reasonable attorneys' fees and costs incurred by them in this action.

## FIFTH CAUSE OF ACTION

### FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS

#### (Plaintiff and the Class Against all Defendants)

109.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

110.    At all relevant times, Defendants had a duty to comply with Labor Code section 226.

111.    Labor Code section 226(a) requires that, semimonthly or at the time of each payment of wages, employers must furnish each employee with an accurate itemized wage statement in writing that accurately shows (1) gross wages earned, (2) total number of hours worked, (3) the number of any piece-rate units earned and all applicable piece rates, (4) all deductions made from wages, (5) net wages earned, (6) the inclusive dates of the pay period, (7) the name and last four digits or employment identification number of the employee, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect and the corresponding number of hours worked at each hourly rate.  Defendants failed to include in wage statements all hours

worked and accumulated vacation, sick pay, split shifts and record reporting time pay.

112.    Labor Code section 226(e)(1) authorizes an employee suffering injury as a result of a knowing and intentional failure by an employer to provide an accurate itemized wage statement to recover the greater of all actual damages or $50 for the initial pay violation and $100 for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee, in addition to an award of costs and attorneys' fees.

113.    During the relevant time period, Defendants knowingly and intentionally failed to comply with Labor Code section 226(a) on wage statements that were provided to Plaintiff and Class Members.  The deficiencies include, among other things, Defendants' failure to correctly state the gross and net wages earned, the total hours worked, all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate.

114.    As a result of Defendants' violations of California Labor Code section 226(a), Plaintiff and Class Members have suffered injury and damage to their statutorily protected rights. Specifically, Plaintiff and Class Members have been injured by Defendants' intentional violation of California Labor Code section 226(a) because they were denied both their legal right to receive, and their protected interest in receiving, accurate itemized wage statements under California Labor Code section 226(a).  Plaintiff had to file this lawsuit in order to determine the extent of the underpayment of wages, thereby causing Plaintiff to incur expenses and lost time.  Plaintiff would not have had to engage in these efforts and incur these costs had Defendants provided the accurate wages earned. This has also delayed Plaintiff' ability to demand and recover the underpayment of wages from Defendants.

115.    Defendants' violations of California Labor Code section 226(a) prevented Plaintiff and Class Members from knowing, understanding and disputing the wages paid to them, and resulted in an unjustified economic enrichment to Defendants. As a result of Defendants' knowing and intentional failure to comply with California Labor Code section 226(a), Plaintiff and Class Members have suffered an injury, and the exact amount of damages and/or penalties is all in an amount to be shown according to proof at trial.

116.    Plaintiff and Class Members are also entitled to injunctive relief under California

1  Labor Code section 226(h), compelling Defendants to comply with California Labor Code section

2  226, and seek the recovery of attorneys' fees and costs incurred in obtaining this injunctive relief.

### SIXTH CAUSE OF ACTION

### WAITING TIME PENALTIES

#### (Plaintiff and the Class Against all Defendants)

117.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

118.    At all relevant times, Defendants had a duty to comply with Labor Code sections 201, 202, and 203. Defendants failed to comply with these final paycheck requirements with respect to Plaintiff and Waiting Time Subclass Members.

119.    Labor Code section 201 requires that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

120.    Labor Code section 202 requires that if "an employee not having a written contract for a definite period" quits, the employee's wages shall become due and payable no later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

121.    Labor Code section 203 provides that if an employer willfully fails to pay, without abatement or reduction, any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced, but that the wages shall not continue for more than 30 days per employee.

122.    During the relevant time period, Defendants willfully failed to pay Plaintiff and Waiting Time Subclass Members all their earned wages upon termination including, but not limited to, minimum, regular, overtime, and double time compensation, and premium compensation either at the time of discharge or within 72 hours of leaving Defendant' employ.

123.    As a result of Defendants' failure to timely pay all wages owed to Plaintiff and Waiting Time Subclass Members in accordance with Labor Code sections 201, 202 and 203, Plaintiff and Waiting Time Subclass Members are entitled to recover waiting time penalties,

prejudgment interest, attorneys' fees, and costs in amounts that will be established at trial.

## SEVENTH CAUSE OF ACTION

### (FAILURE TO REIMBURSE FOR BUSINESS EXPENSES)

### (Plaintiff and the Class Against all Defendants)

124.    Plaintiff incorporate all previous paragraphs of this Complaint as though fully set forth herein.

125.    Pursuant to Labor Code §2802, Defendants are required to reimburse Plaintiff for business expenses incurred in the direct consequences of her discharge of her duties for Defendants, including expenses associated with the purchase of equipment.

126.    Within the four years before the filing of this Complaint and continuing until the present time, Plaintiff and Class Members have been required to incur expenses as a condition of and in the discharge of their employment duties and has thereby incurred expenses for these items.

127.    Defendants have failed to reimburse Plaintiff and Class Members for said expenses.

128.    Pursuant to Labor Code, section 2802, subsection (a), Plaintiff will seek to recover work related expenses for herself and the putative class. Pursuant to Labor Code, section 2802, subsection (b), Plaintiff will seek attorneys' fees and litigation costs in an amount subject to proof and approved by the Court.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S QUOTA LAW

### (Plaintiff and the Class Against all Defendants)

129.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

130.    At all relevant times, Defendants had a duty to comply with Labor Code sections 2100 *et seq.*

131.    California's quota laws require the Defendants to implement and maintain quota and production demands consistent with Labor Code sections 2100 – 2112.  The code sections require the following:

### *LABOR CODE SECTION 2100*

*(d)* *"Employee" means a nonexempt employee who works at a warehouse distribution center.*

*(e)*

*(1)* *"Employee work speed data" means information an employer collects, stores, analyzes, or interprets relating to individuals employee's performance of a quota, including, but not limited to, quantities of tasks performed, quantities of items or materials handled or produced, rates or speeds of tasks performed, measurements or metrics of employee performance in relation to a quota, and time categorized as performing tasks or not performing tasks.*

*(2)* *"Employee work speed data" does not include qualitative performance assessments, personnel records, or itemized wage statements pursuant to Section 226, except for any content of those records that includes employee work speed data as defined in this part.*

*(f)* *"Employer" means a person who directly or indirectly, or through an agent or any other person, including through the services of a third-party employer, temporary service, or staffing agency or similar entity, employs or exercises control over the wages, hours, or working conditions of 100 or more employees at a single warehouse distribution center or 1,000 or more employees at one or more warehouse distribution centers in the state. For purposes of this definition, all employees of an employer's commonly controlled group, as that term is defined in Section 25105 of the Revenue and Taxation Code, shall be counted in determining the number of employees employed at a single warehouse distribution center or at one or more warehouse distribution centers in the state.*

*(h)* *"Quota" means a work standard under which an employee is assigned or required to perform at a specified productivity speed, or perform a quantified number of tasks, or to handle or produce a quantified amount of material, within a defined time period and under which the employee may suffer an adverse employment action if they fail to complete the performance standard.*

CLASS ACTION COMPLAINT

*(1) "Warehouse distribution center" means an establishment as defined by any of the following North American Industry Classification System (NAICS) Codes, however that establishment is denominated:*

### LABOR CODE SECTION 2102

*An employee shall not be required to meet a quota that prevents compliance with meal or rest periods, use of bathroom facilities, including reasonable travel time to and from bathroom facilities, or occupational health and safety laws in the Labor Code or division standards. An employer shall not take adverse employment action against an employee for failure to meet a quota that does not allow a worker to comply with meal and rest periods, or occupational health and safety laws in the Labor Code or division standards, or for failure to meet a quota that has not been disclosed to the employee pursuant to Section 2101.*

### LABOR CODE SECTION 2103

*(b) Notwithstanding subdivision (a), consistent with existing law, meal and rest breaks are not considered productive time unless the employee is required to remain on call.*

132.    Defendants' violations of California Labor Code sections 2100 - 2112 prevented Plaintiff and Class Members from knowing, understanding and disputing the wages paid to them, meal and period violations, inability to take restroom breaks, and exposed them to unreasonable health hazards and resulted in an unjustified economic enrichment to Defendants.  As a result of Defendants' knowing and intentional failure to comply with California Labor Code section 2100 et. seq., Plaintiff and Class Members have suffered an injury, and the exact amount of damages and/or penalties in an amount to be shown according to proof at trial.

133.    Plaintiff and Class Members are also entitled to injunctive relief under California Labor Code section 2108, compelling Defendants to comply with California Labor Code sections 2100 et. seq., and seek the recovery of attorneys' fees and costs incurred in obtaining this injunctive relief.

## NINTH CAUSE OF ACTION

CLASS ACTION COMPLAINT

**VIOLATION OF THE CALIFORNIA WARN ACT, CAL. LAB. CODE § 1400,** *et seq.*

**(Plaintiff and the Class Against all Defendants)**

134.    Plaintiff re-alleges and incorporates all preceding paragraphs as if set forth in full herein.

135.    Tesla is an "employer" within the meaning of the California WARN Act, Cal. Lab. Code § 1400, et. seq.

136.    Tesla employed 75 or more persons within the preceding 12 months and is a "covered establishment" within the meaning of the California WARN Act, Cal. Lab. Code § 1400(a).

137.    Plaintiff and those he seeks to represent were at all relevant times "employees" within the meaning of the Cal. Lab. Code § 1400(h). Pursuant to the California WARN Act, California Labor Code § 1400, et seq., "employee" is defined as any person employed for at least six months of the twelve months preceding the date on which notice is required. Plaintiff and other Class Members were employed by Defendants for at least six months of the twelve months preceding the date on which the notice referred to herein was required. 53. The termination at the Facility constituted a "layoff," "mass layoff," or "termination" as defined in Cal. Lab. Code § 1400(c), (d), and (f) in that it was a permanent or temporary shutdown of a single site of employment that resulted in an employment loss for 50 or more employees. Upon information and belief, the shutdown will last longer than 30 days.

138.    The California WARN Act requires employers to provide 60-days' notice of any mass layoff, relocation, or termination to "the employees of the covered establishment covered by the order" under Cal. Lab. Code §1401(a)(1).

139.    On information and belief, prior to April 14, 2024, Defendant did not give any prior written notice of the layoff, mass layoff, or termination to any "employee," including Plaintiff and those he seeks to represent, as that term is defined in Cal. Lab. Code § 1400(b).

140.    Defendant violated the California WARN Act by failing to give timely written notice of the mass layoff as required by Cal. Lab. Code § 1401, which began on or about April 9, 2024. On information and belief, Tesla did not notify the State of California, Employment Development

1  Department, or the chief elected officials of the city or county as required by Cal. Lab. Code § 1401in

2  advance of the "mass layoff" or "termination."

3      141.   As such, Plaintiff and those he seeks to represent are "employee[s]" within the

4  meaning of the Cal. Lab. Code § 1400(h).

5      142.   The California WARN Act expressly permits a person to bring a civil action

6  individually and on behalf of all those similarly situated to seek relief for violations of the provisions

7  of Cal. Lab. Code § 1404.44.

8      143.   Moreover, Defendant's violations of the California WARN Act were not in good faith,

9  and Defendant had no reasonable grounds for believing that the plant closing or mass layoff it ordered

10  was not in violation of the notice requirements at Cal. Lab. Code § 1401.

11                    **TENTH CAUSE OF ACTION**

12                    **UNFAIR BUSINESS PRACTICES**

13              **(Plaintiff and the Class Against all Defendants)**

14      144.   Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as

15  though fully set forth herein.

16      145.   Plaintiff brings this claim individually and on behalf of Class Members.

17      146.   Business & Professions Code section 17200 ("UCL") prohibits unfair competition in

18  the form of any unlawful, unfair, or fraudulent business act or practice.

19      147.   Business and Professions Code section 17204 allows "any person who has suffered

20  injury in fact and has lost money or property as a result of such unfair competition" to prosecute a

21  civil action for violation of the UCL.

22      148.   Labor Code section 90.5, subdivision (a) states it is the public policy of California to

23  vigorously enforce minimum labor standards in order to ensure employees are not required to work

24  under substandard and unlawful conditions, and to protect employers who comply with the law from

25  those who attempt to gain competitive advantage at the expense of their workers by failing to comply

26  with minimum labor standards.

27      149.   Beginning at an exact date unknown to Plaintiff, but at least since the date four years

28  prior to the filing of this complaint, Defendants have committed acts of unfair competition as defined

by the Unfair Business Practices Act, by engaging in the unlawful, unfair, and fraudulent business practices and acts described in this complaint, including, but not limited to, violations of Labor Code sections 201-204, 206, 226, 226.7, 227.3, 351, 510, 512, 1182.12, 1194, 1194.2, 1197, 1198, 1400 *et. seq,.* 2100-2112, 2802.

150.    The violations of these laws and regulations, as well as of fundamental California public policies protecting workers, serve as unlawful predicate acts and practices for purposes of Business and Professions Code sections 17200 *et seq.*

151.    As a result of these actions, Plaintiff, on information and belief, allege that Defendants are able to unfairly compete with other comparable companies in the State of California in violation of Business & Professions Code sections 17000 *et. seq.* and sections 17200 *et. seq.*  Due to these unlawful, unfair, and/or fraudulent business practices, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California.

152.    The victims of these unlawful, unfair, and/or fraudulent business practices include, but are not limited to, Plaintiff, putative class members, Defendants' competitors in the State of California, and the general public.  Plaintiff is informed and believes, and thereon alleges, that Defendants performed the above-mentioned acts with the intent of gaining an unfair competitive advantage and thereby injuring Plaintiff, putative class members, Defendants' competitors, and the general public.

153.    Plaintiff' success in this action will enforce important rights affecting the public interest and public policy.

154.    Business and Professions Code sections 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.  Injunctive relief is necessary and appropriate to prevent Defendants from repeating their unlawful, unfair, and fraudulent business acts and business practices alleged above.

155.    Business and Professions Code section 17203 provides that the Court may restore to any person in interest, any money or property that may have been acquired by means of such unfair competition.  Plaintiff and the Class Members are entitled to restitution pursuant to Business and

Professions Code section 17203 for wages and payments unlawfully withheld from employees, including the fair value of the meal and rest periods and other losses alleged herein, during the four-year period prior to the filing of this complaint.  All remedies are cumulative pursuant to Business & Professions Code section 17205.

156.    Business and Professions Code section 17202 provides: "Notwithstanding section 3369 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition." Plaintiff and Class Members are entitled to enforce all applicable penalty provisions of the Labor Code pursuant to Business and Professions Code section 17202.

157.    Plaintiff requests injunctive relief pursuant to Business & Professions Code section 17203 to enjoin Defendants from continuing the unfair/unlawful business practices alleged herein.

158.    Plaintiff herein takes upon enforcement of these laws and lawful claims.  There is a financial burden involved in pursuing this action. The action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing Plaintiff to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to the Code of Civil Procedure section 1021.5 and others.

### **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

1.    For certification of this action as a class action, including certifying the Class and Subclasses alleged by Plaintiff;

2.    For appointment of Plaintiff, ABRAHAM GARCIA as the class representative;

3.    For appointment of Jose Garay of JOSE GARAY, APLC as class counsel for all purposes;

4.    For compensatory damages in an amount according to proof with interest thereon;

5.    For economic and/or special damages in an amount according to proof with interest thereon;

6.    For damages, monetary relief, wages, premiums, benefits and penalties, including

1    interest thereon;

2    7.    For vacation pay pursuant to Labor Code section 227.3;

3    8.    For expense reimbursements pursuant to Labor Code section 2802;

4    9.    For waiting time penalties pursuant to Labor Code section 203;

5    10.    For split-shift premiums, according to proof;

6    11.    For reporting time pay, according to proof;

7    12.    For liquidated damages pursuant to Labor Code section 1194.2;

8    13.    For statutory penalties to the extent permitted by law, including those pursuant to the

9    Labor Code and IWC Wage Orders;

10    14.    For restitution to Plaintiff and Class Members of all money and property unlawfully

11    acquired by Defendants through unfair or unlawful business practices pursuant to

12    Business and Professions Code sections 17200 *et seq.*;

13    15.    For an order requiring Defendants to restore and disgorge all funds to each employee

14    acquired by means of any act or practice declared by this Court to be unlawful, unfair

15    or fraudulent and, therefore, constituting unfair competition under Business and

16    Professions Code sections 17200, *et seq.*;

17    16.    For prejudgment interest on all sums recovered pursuant to Labor Code section 218.6

18    and Civil Code sections 3287 and 3289;

19    17.    For post judgment interest on all amounts awarded to Plaintiff and Class Members

20    as provided by law;

21    18.    For recovery of attorneys' fees and costs provided by Labor Code sections 226, 1194,

22    and Code of Civil Procedure section 1021.5;

23    19.    For injunctive relief pursuant to Labor Code section 2108; and,

24    20.    For such other relief as the Court deems just and proper

25    //

26    //

27    //

28

**CLASS ACTION COMPLAINT**

Dated: August 6, 2024

**JOSE GARAY, APLC**

By:    _____

Jose Garay
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: August 6, 2024

**JOSE GARAY, APLC**

By:    _____

Jose Garay, Esq.
Attorneys for Plaintiff

CLASS ACTION COMPLAINT