Jose Garay (SBN 200494)
**JOSE GARAY, APLC**
249 E Ocean Blvd # 814
Long Beach, CA 90802
Telephone: (949) 208-3400
E-mail:  jose@garaylaw.com

Attorney for Plaintiff, Abraham Garcia

**FILED**
Superior Court of California
County of Los Angeles

**10/10/2024**

David W. Slayton, Executive Officer / Clerk of Court

By: _____ C. Vega _____ Deputy

Electronically Received 10/10/2024 08:42 AM

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

ABRAHAM GARCIA, individually, on behalf of himself and others similarly situated,

                    Plaintiff,

            vs.

TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKOWN)
AND DOES 1 TO 50,

                    Defendant.

`

Case. NO. 24STCV19700
*Assigned for All Purposes to:*
*Hon. Elaine Lu*

**FIRST AMENDED CLASS ACTION & PAGA COMPLAINT**

1.  Failure to Pay All Wages Including Minimum and Overtime Wages;
2.  Failure to Provide Meal Periods;
3.  Failure to Provide Periods;
4.  Failure to Provide Recovery Periods
5.  Failure to Produce Personnel Records;
6.  Failure to Produce Signed Records;
7.  Failure to Implement Heat Prevention & Maintain Legal Temperature Controls;
8.  Failure to Provide Accurate Itemized Wage Statements;
9.  Failure to Pay Waiting Time Penalties;
10. Failure to Reimburse for Necessary Business Expenditures;
11. Violation of California's Quota Laws;
12. Violation of WARN Act;
13. Unfair Business Practices; and,
14. Enforcement of the Private Attorneys General Act of 2004

**DEMAND FOR JURY TRIAL**

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

Plaintiff, Abraham Garcia, (hereinafter, "Plaintiff"), individually, and on behalf of himself and all others similarly situated, brings this first amended class action & Private Attorney General Act ("PAGA') complaint ("Complaint") against defendant, TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKOWN) and Does 1 through 50 (collectively, "Defendants" or TESLA MOTORS, INC."), and alleges as follows:

## INTRODUCTION

1.      This is a class action brought on behalf of Plaintiff and the Class he seeks to represent ("Class" or "Class Members"). The Class consists of all current and former non-exempt employees employed by Defendants in the State of California during the four (4) years prior to the filing of this class action until class certification ("Class Period").  Plaintiff reserves the right to amend this complaint to reflect a different Class Period as further discovery is conducted.

2.      This is also a PAGA action brought on behalf of Plaintiff and Aggrieved Employees and the State of California as Private Attorney General ("Aggrieved Employees"). The Class consists of all current and former non-exempt employees employed by Defendants in the State of California during the four (4) years prior to the filing of this class action until class certification ("Class Period").  Plaintiff reserves the right to amend this complaint to reflect a different Class Period as further discovery is conducted.

3.      Plaintiff, individually and on behalf of the Class Members, seeks relief against Defendants due to Defendants' violations of the applicable Industrial Welfare Commission ("IWC") Wage Orders, Code of Regulations, and Labor Code, including: (1) failure to pay all wages (including minimum, regular, overtime, and double time compensation); (2) failure to provide meal periods or compensation in lieu thereof; (3) failure to authorize or permit rest breaks or provide compensation in lieu thereof; (4) failure to authorize or permit rest breaks or provide compensation in lieu thereof; (5) failure to authorize or permit or provide recovery periods or provide compensation in lieu thereof; (6) failure to reimburse business expenses; (7) failure to provide accurate itemized wage statements; (8) failure to pay all wages due upon separation of employment; (8) violations of Labor Code § 2100 *et. seq*., California's quota laws; (9) Violation of California WARN Act, and (10) Violation of California's UCL.

4.      Plaintiff and the other similarly situated employees were employees of Defendant TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKNOWN), pursuant to the WARN Act's single employer rule.  Plaintiff and other similarly situated employees of Defendant were terminated as part of, or because of a mass layoff and plant closings, under federal and California law (hereinafter, "Plant Closings"), ordered by the Defendant on or about April 14, 2024, and thereafter. Defendant violated the WARN Act and the California WARN Act by failing to give Plaintiff and other similarly situated employees of the Defendant at least 60 days' advance written notice of termination, as required. Consequently, Plaintiff and other similarly situated employees of Defendant are entitled under the WARN Act to recover from Defendant their wages and ERISA benefits for 60 days, none of which has been paid.

5.      At all relevant times herein, Defendants have consistently maintained and enforced against Plaintiff and Class Members the unlawful practices and policies set forth herein.

6.      Plaintiff seeks injunctive and monetary relief against Defendants on behalf of himself and the putative Class to recover, among other things, unpaid wages, liquidated damages, restitution, interest, attorneys' fees, costs, and penalties pursuant to Labor Code §§ 201-204, 206, 208, 226, 226.7, 227.3, 351, 510, 512, 1182.12, 1194, 1194.2, 1197, 1198, 2100-2112, 2802, and Code of Civil Procedure § 1021.5

7.      This is a Complaint brought under the Worker Adjustment and Retraining Notification Act, 29 USC § 2101-2109 (the "WARN Act") and this Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5). The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C § 1367(a) because they are so related to this action that they form part of the same case or controversy.

8.      Plaintiff brings this action on her own behalf, and pursuant to the WARN Act, California WARN Act, Rules 23(a) and (b) of the Federal Rules of Civil Procedure, and as a representative action under PAGA on behalf of all other similarly situated former employees of Defendant who were terminated by Defendant on or about April 14, 2024, and thereafter.

9.      Plaintiff and proposed class members are "affected employee(s)" subject to an

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

"employment loss," as those terms are defined in the WARN Act, 29 U.S.C. § 2101(a)(5) and (6).

10.    Plaintiff and proposed class members were subjected to "plant closings" and/or "mass layoffs" as those terms are defined in the federal WARN Act, 29 U.S.C. § 210.

11.    Defendant failed to give Plaintiff the statutorily required sixty (60) days advanced written notice as required.

12.    At all relevant times, Defendant employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

13.    At all relevant times, Defendant was an "employer", as that term is defined in 29 U.S.C. § 2101(a)(1), 20 C.F.R. § 639(a), and continued to operate as a business until it ordered terminations at the Facility. Defendant constituted a "single employer" of Plaintiff and Class members under the WARN Act. The Termination at the Facility resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty (50) of Defendant's employees at the Facility as well as 33% of Defendant's workforce at the Facility, excluding "part-time employees," as that term is defined by the WARN Act. 29 U.S.C. § 2101(a)(8). Plaintiff and each of the members of the Class were discharged by Defendant without cause on their part, as part of or as the reasonably foreseeable result of the termination ordered by Defendant at the Facility. Plaintiff and each of the other members of the Class are "affected employees" of Defendant within the meaning of 29 U.S.C. §2101 (a)(5). Defendant was required by the WARN Act to give Plaintiff and each of the other members of the Class at least sixty (60) days advanced written notice of their termination.

14.    Defendant failed to give Plaintiff and other members of the Class written notice that complied with the requirements of the WARN Act.  Plaintiff and each of the members of the Class are an "aggrieved employee" of Defendant as that term is defined in 29 U.S.C. §2104(a)(7).  Defendant failed to pay Plaintiff and each of the other members of the Class their respective wages, salary, commissions, bonuses, accrued holiday pay, and accrued vacation for 60 days following their respective terminations and failed to make the pension and 401(k) contributions and provide employee benefits under ERISA, other than health insurance, for 60 days from and after the dates of their termination.

-4-

**PARTIES**

15.    Plaintiff is a California citizen and resides in Los Angeles County, California. Defendants employed Plaintiff as a non-exempt, hourly employee during the Class Period. Plaintiff, an adult resident and citizen of Los Angeles County, California, was employed by TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKNOWN), and worked in Los Angeles County, California until his termination on or about April 15, 202 Pursuant to the California WARN Act, California Labor Code § 1400, *et seq.*, "employee" is defined as any person employed for at least six months of the twelve months preceding the date on which notice is required. Plaintiff and other Class Members were employed by Defendants for at least six months of the twelve months preceding the date on which the notice referred to herein was required. Plaintiff was employed as a "warehouse associate" who was responsible for moving products and goods within and throughout Defendant's warehouse facility.

16.    Defendant TESLA MOTORS, INC., DBA TESLA, INC. (FORM UNKOWN) is incorporated in Delaware.  TESLA MOTORS, INC. conducts business throughout California, including in LOS ANGELES County, among other locations.  TESLA MOTORS, INC. owns and manufacturing and production facilities, operates delivery, warehouse, and servicing centers throughout California, including the center in which it employed Plaintiff and is a covered employer pursuant to Labor Code §§ 2100 *et seq.*

17.    Doe Defendants 1-50 providing staffing and placement services for TESLA MOTORS, INC. are joint and direct employers and jointly and severally liable to Plaintiff and Class Members and will be amended into the lawsuit once their identity is discovered. These entities also conduct business throughout California, including in LOS ANGELES County, among other locations and are "*covered employers*" pursuant to Labor Code §§ 2100 *et seq.*

18.    DOES 1 through 50, are sued under fictitious names pursuant to Code of Civil Procedure § 474 because Plaintiff does not know their true names or capacities.  Plaintiff will seek leave of court to amend this Complaint and serve such fictitiously named Defendants when their names and capacities are ascertained.  Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 50 are or were the partners, joint employers, agents, owners, shareholders,

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

1   managers, or employees of TESLA MOTORS, INC. at all times relevant to this Complaint.

2   **JURISDICTION AND VENUE**

3   19.     This Court has jurisdiction over this action pursuant to the California Constitution,

4   Article VI, § 10 and Code of Civil Procedure § 410.10.  All claims alleged herein arise under

5   California law for which Plaintiff seeks relief authorized by California law.

6   20.     Plaintiff brings this action pursuant to the Code of Civil Procedure § 382. The relief

7   and monetary damages, restitution, penalties, and other amounts Plaintiff seeks exceed the minimal

8   jurisdictional limits of the Superior Court.

9   21.     This Court has personal jurisdiction over Defendants because TESLA MOTORS,

10  INC. and. maintains a principal place of business is in California and Defendants, on information

11  and belief, have sufficient minimum contacts in Los Angeles California, or otherwise intentionally

12  avail themselves of the California market so as to render the exercise of jurisdiction over them by

13  the California courts consistent with traditional notions of fair play and substantial justice.

14  22.     Venue is proper in this Court under Code of Civil Procedure §§ 395(a) and 395.5

15  because, on information and belief, Defendants reside, transact business, maintain offices, and/or

16  have an agent or agents in this county, and the acts and omissions alleged herein took place in this

17  county.

18  23.     This Court is an appropriate venue for this action under Code of Civil Procedure §§

19  395 and 395.5 because the acts that give rise to the causes of action alleged herein occurred in the

20  County of LOS ANGELES and throughout the State of California.  Plaintiff hereby designates the

21  County of LOS ANGELES, State of California as the place of proper venue.  This Court has

22  personal jurisdiction over Defendant because Defendant resides in, is incorporated in, has its main

23  place of business in, and/or conducts business in the State of California, and a substantial portion

24  of the acts, omissions, events, and transactions constituting the causes of action alleged herein

25  occurred within the State of California, and more specifically, in the County of LOS ANGELES.

26  (See Code of Civil Procedure § 410.10).

27

28

24. This Court has subject matter jurisdiction over the causes of action alleged in this Complaint because the Court is a court of general subject matter jurisdiction and is not otherwise excluded from exercising subject matter jurisdiction over said causes of action.

25. The State of California, Los Angeles County, has jurisdiction in this matter because the individual claims are under the seventy-five thousand dollar ($75,000.00) individual jurisdictional threshold and the five million dollar ($5,000,000.00) aggregate jurisdictional threshold for federal court diversity jurisdiction. Further, there is no federal question at issue as the issues herein are based solely on the California Labor Code, Industrial Welfare Commission Wage Orders, Code of Civil Procedure and Rules of Court. Thus, the State of California, Los Angeles Superior Court maintains the appropriate jurisdiction to hear this matter.

26. Defendant has in prior lawsuits removed state lawsuits to federal court and thereafter stipulated to remand the same lawsuits to state court as such has waived federal jurisdiction.

**ARBITRATION**

27. Plaintiff's and Class Members' claims as alleged herein are not subject to arbitration agreements. PAGA or Class Action claims waivers are not enforceable against employees engaged in interstate commerce as transportation workers. Defendant's arbitration agreement, if any, does not apply to this matter for the following reasons: 1) Plaintiff falls with the Transportation Workers Exemption and the FAA does not apply, and 2) Plaintiff's PAGA claims for civil penalties are not a Covered Claims under Defendant's Arbitration Agreement, and 3) as the FAA does not apply to the parties, Defendant's agreement is unenforceable should it exist.

28. Although the FAA applies broadly and requires enforcement of certain arbitration agreements according to their terms, under the transportation worker exemption, "contracts of employment with seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are exempt from the FAA. 9 U.S.C. § 1; *Ortiz v. Randstad InHouse Services, LLC* (9th Cir. 2024) 95 F.4th 1152. The U.S. Supreme Court recently addressed the transportation workers exemption in *Southwest Airlines Co. v. Saxon* (2022), 596 U.S. 450, 456. The U.S. Supreme Court engaged in a two-step analysis to determine whether an employee qualified under the transportation workers exemption. *Id*. at 455-459. First, the Court "defined the relevant class

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

of workers. *Id.* at 455. Second, the Court then "determine whether that class of workers is 'engaged in foreign or interstate commerce.'" *Id.*

29.    In this case, Plaintiff and putative Class Members were and are of the class of workers that engaged in foreign or interstate commerce. Plaintiff performed an essential function at Defendant's distribution centers, logistic facilities, fulfillment centers, and/or warehouses in Los Angeles. Defendant ships products to locations throughout Los Angeles County and throughout the country. Plaintiff and/or Class Members were responsible for tasks and duties essential critical to Defendant business.

30.    Plaintiff and Class Members worked at the Defendant's warehouse locations, which necessarily received and shipped goods and products, through both foreign and interstate streams of commerce.  Plaintiff and putative Class Members were and are a class of workers who "played a direct and 'necessary role in the free flow of goods' across borders" and "actively engaged in transportation'" of such goods. *Saxon*, 596 U.S. at 458 (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001). In this case, the relevant goods and products were still moving in interstate commerce when Plaintiff and putative Class Members interacted with them, and Plaintiff played a necessary part in facilitating their continued movement.

31.    As Plaintiff was "actively engaged" and "intimately involved with" the interstate commerce of good and products, [Plaintiff] is an exempt transportation worker under the FAA. Plaintiff was employed as a "warehouse associate."  His duties involved, among other activating related to interstate commerce, processing orders in shipping and receiving, stocking shelves, moving materials within the warehouse for transportation across state lines, loading and unloading, and driving a forklift carrying products intended for interstate shipping and receiving. As such, the FAA does not apply to the arbitration agreement, if one exists.

## CLASS ALLEGATIONS

32.    Plaintiff brings this class action pursuant to Code of Civil Procedure § 382 on behalf of himself and all others similarly situated who were injured by Defendants' violations of the Labor Code, Business and Professions Code §§ 17200, *et seq.*, and IWC Wage Orders during the Class Period.

33.    Plaintiff' and Class Members' job duties, at TESLA MOTORS, INC. included a sundry of warehouse duties subject to production targets and quotas.  Under Defendants' quotas, Plaintiff and putative Class Members are assigned or required to perform at a specified productivity speed, or perform a quantified number of tasks, or to handle or produce a quantified amount of material, within a defined time period and under which employees suffer adverse employment actions if they fail to complete the performance standard for TESLA MOTORS, INC..

34.    Plaintiff is informed and believes, and thereon alleges that at all times hereinafter mentioned, Defendants were and are subject to the Labor Code and IWC Wage Orders as employers, whose employees were and are engaged throughout this county and the State of California.

35.    Plaintiff is informed and believes, and thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendant.

36.    Plaintiff is informed and believes, and thereon alleges, that each of the Defendants directly or indirectly, through agents or other persons or entities, employed or otherwise exercised control over the wages, hours, and working conditions of Plaintiff and the Class Members. Furthermore, each of the Defendants in all respects acted as the employer and/or joint employer of Plaintiff and the Class Members.

37.    Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, the Defendants, acting as the agent, alter ego, agent, servant, joint venturer, co-conspirator, and/or partner for the other, within a common enterprise and legal authority to act on the other's behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of TESLA MOTORS, INC.

38.    At all relevant times, Defendants, and each of them, acted within the scope of such agency or employment, or ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendant in proximately causing the damages herein alleged.

39.    Plaintiff is informed and believes, and thereon alleges, that each of said Defendants

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

1    is in some manner intentionally, negligently, and/or otherwise responsible for the acts, omissions,

2    occurrences, and transactions alleged herein.

3         40.    Plaintiff' proposed Class consists of and is defined as follows:

4              Class

5              All current and former non-exempt employees employed by Defendants in the State

6              of California within four years prior to the filing of this action to the date of class

7              certification.

8              Recovery Period Subclass

9              All persons who are employed or have been employed by Defendant in the State of

10             California who, within the four years of the filing of this Complaint, have worked as

11             non-exempt employees and were not permitted or provided recovery periods or paid

12             compensation in lieu thereof.

13             Meal Period Subclass

14             All persons who are employed or have been employed by Defendant in the State of

15             California who, within the four years of the filing of this Complaint, have worked as

16             non-exempt employees and were not permitted or provided meal periods or paid

17             compensation in lieu thereof.

18             Rest Period Subclass

19             All persons who are employed or have been employed by Defendant in the State of

20             California who, within the four years of the filing of this Complaint, have worked as

21             non-exempt employees and were not permitted or provided rest periods or paid

22             compensation in lieu thereof.

23             Personnel File Subclass

24             All persons who are employed or have been employed by Defendants in the State of

25             California who, for the four years prior to the filing of this class action to the present

26             have worked as non-exempt employees and have requested their personnel file and

27             were denied and/or not provided their personnel file pursuant to California law.

28             Waiting Time Subclass

-10-

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

All Class Members who separated from their employment with Defendants and who were not paid waiting time penalties at any time within three years prior to the filing of this action to the date of class certification.

Plaintiff also seeks to certify the following Subclass:

<u>Quota Subclass</u>

All current and former non-exempt employees employed by Defendants in the State of California since January 1, 2022, who were subject to quotas in violation of Labor Code §§ 2100-2112.

<u>WARN Subclass</u>

All of Defendant's employees who were terminated from employment on or around April 14, 2024, as part of a mass layoff or plant closing.

<u>Temperature Subclass</u>

All current and former non-exempt employees employed by Defendants in the State of California who were subject to unlawful temperature control and heat prevention.

41.    Members of the Class and Subclasses described above will be collectively referred to as "Class Members."

42.    Plaintiff reserves the right to modify or re-define the Class or Subclass(es), establish additional subclasses, or modify or re-define any class or subclass definition as appropriate based on investigation, discovery, and specific theories of liability.

43.    There is a well-defined community of interest in this litigation and the proposed Class and Subclass are readily ascertainable.

44.    **Commonality:** This action has been brought and may properly be maintained as a class action under the California Code of Civil Procedure § 382 because there are common questions of law and fact as to the Class Members that predominate over any questions affecting only individual members including, but not limited to, the following:

(a)    Whether Defendant violated California's WARN Act;

(b)    Whether Defendants' practices and policies violated Labor Code §§ 2100-2112 for requiring warehouse employees to meet excessive and unlawful quotas thereby

-11-

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

1    preventing them from complying with rest, recovery and meal periods, their ability

2    to use restroom facilities and exposed them to safety and OSHA violations;

3    (c)    Whether Defendants paid Plaintiff and Class Members all non-discretionary bonuses

4    and wages for all hours worked, including the correct legal regular wage, minimum

5    wage, and overtime and double overtime rate;

6    (d)    Whether Defendants paid Plaintiff and Class Members the correct legal wages for all

7    hours worked, including the correct legal minimum wage, overtime and double

8    overtime rate, premium wages, sick pay, and vacation pay when Defendants paid

9    bonuses;

10    (e)    Whether Defendants pay or vest sick pay wages in accordance with California law;

11    (f)    Whether Defendants violated the vacation pay law in California pursuant to Labor

12    Code § 227.3;

13    (g)    Whether Defendants violated California's reporting time pay regulations;

14    (h)    Whether Defendants' rounding policy and practice favored Defendants by

15    systematically undercompensating Plaintiff and Class Members;

16    (i)    Whether Defendants compensated Plaintiff and Class Members for time spent during

17    rest periods and/or meal periods while under the control of Defendants during split

18    shifts, meal periods, rest periods, recovery periods and other non-productive time;

19    (j)    Whether Defendants paid Plaintiff and Class Members the legal split-shift premium;

20    (k)    Whether Defendants required Plaintiff and Class Members to work off-the-clock

21    without compensation;

22    (l)    Whether Defendants required Plaintiff and Class Members to incur business

23    expenses without reimbursement;

24    (m)    Whether Defendants authorized and permitted Plaintiff and Class Members legally

25    compliant meal periods or paid compensation in lieu thereof;

26    (n)    Whether Defendants authorized and permitted Plaintiff and Class Members legally

27    compliant rest periods or paid compensation in lieu thereof;

28    (o)    Whether Defendants authorized and permitted Plaintiff and Class Members legally

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

compliant recovery periods or paid compensation in lieu thereof;

(p)  Whether Defendants were compliant with California law with respect to heat illness prevention and cooling down provisions;

(q)  Whether Defendants have a common policy and/or practice of failing to keep and maintain accurate records subject to Labor Code §§ 226, 1198.5, and/or 432;

(r)  Whether Defendants have a common policy and/or practice of failing to produce and/or timely produce records in response to a request under Labor Code §§ 226, 1198.5, 432, and/or 2104;

(s)  Whether Defendants have a common policy and/or practice of lawfully complying with Labor Code §§ 226, 1198.5, and/or 432 requests on a weekly, monthly, or yearly basis by store location;

(t)  Whether Defendants have a common policy and/or practice of providing specific records for requests pursuant Labor Code §§ 226, 1198.5, and/or 432 which do not comply with California law;

(u)  Whether Defendants have a common policy and/or practice of lawfully complying with Labor Code §§ 226, 1198.5, and/or 432 requests via HR at its various facilities;

(v)  Whether Defendants have a common policy and/or practice of lawfully complying with Labor Code §§ 226, 1198.5, and/or 432 requests on an internal versus external basis (i.e. by a team member versus a former team member);

(w)  Whether Defendants have a common policy and/or practice of lawfully complying with Labor Code §§ 226, 1198.5, and/or 432 requests based on internal documentation and/or correspondence in response to a request for qualifying records thereon (including any correspondence listing or outlining what Defendants' employee(s) ascertained for purposes of compliance and what they left out of the production);

(x)  Whether Defendants have a common policy and/or practice of lawfully complying with Labor Code §§ 226, 1198.5, and/or 432 requests under each of Defendants' internal departments including but not limited to HR, payroll, etc., that routinely

-13-

handle any aspect of a request subject to those Labor Code sections;

(y)     Whether Defendants have a common policy and/or practice of lawfully complying with Labor Code §§ 226, 1198.5, and/or 432 for payments made to any requestor for statutory penalties under those Labor Code section;

(z)     Whether Defendants have a common policy and/or practice of failing to comply with Labor Code § 226 through its "Computer-Generated Records" productions;

(aa)    Whether Defendants failed to provide Plaintiff and Class Members with accurate itemized wage statements;

(bb)    Whether Defendants in the State of California who were subject to unlawful temperature control and heat prevention.

(cc)    Whether Defendants failed to timely pay the Plaintiff and Class Members all wages due immediately upon termination or within 72 hours of resignation;

(dd)    Whether Defendants' conduct was willful or reckless; and,

(ee)    Whether Defendants engaged in unfair business practices in violation of Business and Professions Code §§ 17200, *et seq*.

45.     There is a well-defined community of interest. Plaintiff and Class Members have suffered common injuries as a result of Defendants' systemic employment policies and practices. Looking to Defendants' employment policies and practices, the Court can adjudicate the lawfulness of those policies and practices on a class-wide basis, according to proof, and issue an award to Plaintiff and Class Members accordingly. Answers to common questions raised in this Complaint will advance resolution of each individual Class Member's claims.

46.     **Numerosity**: The Class Members are so numerous that joinder of all members is impracticable. Although the members of the entire Class and Subclasses are unknown to Plaintiff at this time, on information and belief, the class is estimated to be greater than 500 individuals.

47.     **Ascertainability**: The identities of the Class Members are readily ascertainable by inspection of Defendants' employment and payroll records.

48.     **Typicality:** The claims (or defenses, if any) of Plaintiff are typical of the claims of the Class Members because Defendants' failure to comply with the provisions of California's wage

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

and hour laws entitled each Class Member to similar pay, benefits, and other relief.  The injuries sustained by Plaintiff are also typical of the injuries sustained by Class Members because they arise out of and are caused by Defendants' common course of conduct as alleged herein.

49.     **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of all Class Members because it is in Plaintiff' best interest to prosecute the claims alleged herein to obtain full compensation and penalties due to Plaintiff and the Class Members. Plaintiff' attorneys, as proposed class counsel, are competent and experienced in litigating large employment class actions and versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred and, throughout the duration of this action, will continue to incur attorneys' fees and costs that have been and will be necessarily expended for the prosecution of this action for the substantial benefit of the Class Members.

50.     **Superiority:** The nature of this action makes use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared to separate lawsuits and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner for the entire Class and Subclasses at the same time.  If appropriate, this Court can, and is empowered to, fashion methods to efficiently manage this case as a class action.

51.     **Public Policy Considerations:** Employers in the State of California violate employment and labor laws every day.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means.  Class actions provide class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights while affording them privacy protections.

52.     It is the public policy of California to provide recovery periods and protect employees' safety and illness related to heat, humidity, and temperate related illnesses. The following article summarizes the intent of California law and policy:

*The California Occupational Safety and Health Standards Board voted to adopt on*

*June 20, 2024 and indoor heat standard in California requiring considerable*

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

*compliance obligations on employers. The new rule applies to all indoor work areas where the temperature reaches 82 degrees, particularly for warehouses, distribution centers, restaurants, and manufacturing plants where indoor temperature cannot be readily controlled. The rule is expected to take effect on August 1, if the Office of Administrative Law expedites its review.*

***Workplace Requirements When Temperatures Rise to 82 Degrees:*** **T***he Board adopted the indoor heat rule back in March 2024.  The new rule includes a rigid compliance framework for employers with indoor work areas when the temperature reaches 82 degrees. Employers are required to comply by taking proactive steps to prevent indoor heat exhaustion and related illnesses and safety risk.*

***Develop a Written Heat Illness Prevention Plan:***  *Employers must create and implement a written Indoor Heat Illness Prevention Plan that includes procedures for accessing water, acclimatization, cool-down areas, measuring the temperature and heat index, and emergency response measures.  The plan must be a tailored plan to the workplace conditions. In its [recently published FAQs](https://www.dir.ca.gov/dosh/heat-illness/Indoor-faq.html)[1] on the new rule, Cal/OSHA has emphasized that a Heat Illness Prevention Plan that "is little more than a restatement of the safety orders does not satisfy the standard; instead, it must be specific and customized to the employer's operations."*

***Provide Fresh, Pure, and Suitably Cool Drinking Water:***  *Employers must provide employees with fresh, pure, and suitably cool drinking water, free of charge. The water must be located as close as practicable to the areas where employees are working and in indoor "cool-down areas." If there is no running water, employers must provide each employee with one quart of drinking water per hour. Employers also must encourage the frequent consumption of water during these high-heat conditions.*

***Cool-Down Rest Periods:***  *Employers must provide access to cool-down areas for*

---

[1] https://www.dir.ca.gov/dosh/heat-illness/Indoor-faq.html

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

***recovery*** *and meal and rest periods. Cool-down areas must be maintained at a temperature below 82 degrees, blocked from direct sunlight, and shielded from other high radiant heat sources, to the extent feasible. Employers must allow and encourage employees to take a "preventative cool-down rest" in a cool-down area when employees feel the need to do so to protect themselves from overheating. During the preventive cool-down rest, the employer must monitor the employees, encourage them to remain in the cool-down area, and must not order them back to work until any signs or symptoms of heat illness have been abated. **The rule makes clear that a preventative cool-down rest period "has the same meaning as 'recovery period' in Labor code subsection 226.7(a)"** – affording employees daily premium pay when they are not taking necessary recovery periods.*

*__Acclimatization:__  Employers must closely observe employees who are newly assigned to high heat conditions for signs of heat stress during their first 14 days of work in these conditions, as well as any employees working during a heat wave where no effective engineering controls are in use.*

*__Training Requirements:__ Employers must effectively train non-supervisory and supervisory employees on the risks of heat illness in the workplace. This training must include both environmental and personal risk factors for heat illness, and employer's procedures for complying with the indoor heat illness prevention regulation. Supervisors must receive additional training that includes requirements on responding to symptoms of heat illness and instructions on monitoring and responding to hot weather advisories.*

*__Additional Requirements When Temperature Reaches 87 Degrees (or 82 Degrees Under Specific Conditions):__ Employers will need to follow additional requirements when the temperature or heat index reaches 87 degrees, or 82 degrees in places where employees wear clothing that restricts heat removal or work in a high radiant heat area. __Measuring and Recording Requirements:__ Employers must measure and record the temperature and heat index when it is first "reasonable to*

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

1    *suspect" that it either reaches 87 degrees (or 82 degrees with employees wearing*

2    *heat restrictive clothing or working in a high radiant heat area). Those initial steps*

3    *must be taken where employees are working and when exposures are expected to*

4    *be greatest.*

5    *Measurements must be taken again when they are reasonably expected to be at*

6    *least 10 degrees above previous measurements. Employers must have procedures*

7    *to actively involve employees and their union representatives, if applicable, in*

8    *planning, conducting, and recording measurements, as well as in identifying and*

9    *evaluating all other environmental risk factors for heat illness. Employers must*

10   *maintain records of these measurements (including the time, date, and location of*

11   *the measurement) for 12 months or until the net measurements are taken.*

12   *An employer has the option of not taking measurements, and instead, assuming a*

13   *work area triggers the control measures—such as open areas susceptible to high*

14   *humidity and temperature. In that event, the employer will need to follow the*

15   *hierarchy of control measures.*

16   ***Control Measures:*** *The new rule requires employers to follow a hierarchy of*

17   *control measures for reducing the risk of heat illness, including installing air*

18   *conditioning systems and other building upgrades to reduce the risk of heat*

19   *illness. Employers must use engineering controls to reduce the temperature and*

20   *heat index to below 87 degrees Fahrenheit (or 82 degrees Fahrenheit where*

21   *employees wear clothing that restricts heat removal or work in high radiant heat*

22   *areas). Cal/OSHA cites the following examples of engineering controls that may*

23   *be effective at minimizing the risk of heat illness: 1) Isolation of hot processes, 2)*

24   *Isolation of employees from sources of heat, 3) Air conditioning, 4) Cool fans and*

25   *cooling mist fans, 5) Evaporative coolers (swamp coolers), 6) Natural ventilation*

26   *where the outdoor temperature/heat index is lower than the indoor*

27   *temperature/heat index, 7) Local exhaust ventilation, 8) Shielding from a radiant*

28   *heat source, and/or 9) Insulation of hot surfaces. If engineering controls cannot*

-18-

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

*bring the temperature and heat index below 87 (or 82 degrees when applicable), the next step requires employers to use administrative controls to minimize the risk of heat illness. But even then, employers must use engineering controls to reduce the temperature and heat index to the lowest feasible level.*

*Examples of administrative controls are acclimatizing employees, rotating employees, scheduling work earlier or later in the day, using work/rest schedules, reducing work intensity or speed, reducing work hours, changing required work clothing, and using relief workers.*

*Cal/OSHA has clarified through FAQs that whether engineering controls are feasible is a "fact-sensitive question" that includes an evaluation of the size, configuration and location of the indoor workspace, the sources of radiant heat, and the nature of the work being done by workers, among other things." Finally, if feasible engineering and administrative controls are insufficient, as a last resort, employers must use personal heat-protective equipment, such as water-cooled or air-cooled garments to minimize the risk of heat illness, as feasible.*

*As such, Cal/OSHA and the State of California mandate that recovery periods are provided to warehouse employees and preventative cooling down periods to avoid heat illness be implemented.   Defendant as a matter of practice and policy refuses to comply with the law in favor of generating profits based on excessive production demands and other unlawful conduct as alleged herein.*

(Summarized and abridged from https://www.fisherphillips.com/en/news-insights/californias-new-indoor-heat-illness-rule-3-things-employers-need-to-know-now-to-prepare.html#:~:text=Significantly%2C%20the%20rule%20makes%20clear,not%20taking%20necessary%20recovery%20periods)

## **GENERAL ALLEGATIONS**

53.      **Background**: At all relevant times mentioned herein, Defendants employed Plaintiff and other persons as non-exempt employees at numerous locations within California. Defendants employed Plaintiff in a non-exempt position during her employment and continues to employ non-

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

exempt employees within California.

54.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers, employees, and other professionals who were knowledgeable about California's wage and hour laws, employment and personnel practices, and the requirements of California law.

55.      Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known they had a duty to compensate Plaintiff and Class Members, and Defendants had the financial ability to pay such compensation but willfully, knowingly, and intentionally failed to do so all in order to increase Defendants' profits.  Furthermore, Plaintiff, is informed and believes, and thereon alleges that  Defendants further implemented an unlawful policy and practice of alleging that employees were "stealing time" when they failed to clock-in or clock-out at the designated scheduled time when in fact Defendants use this strategy to terminate, reprimand, or retaliate against employees who complained that Defendants' quota and production demands were unreasonable and violated Labor Code §§ 2100 – 2112.

56.      Plaintiff is informed and believe, and thereon alleges, that at all times Defendants tracked each and every workday and pay period, each shift, meal period, and rest period that was unlawful and in violation of California laws.  Defendants were also fully cognizant that they failed to maintain the proper temperature controls as required by the IWC Wage Orders and California law, as such, exposing them to further health and OSHA safety requirements, prohibited under California quota laws and heat prevention illness laws.

57.      Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they imposed systematic quota and production demands on Plaintiff and Class Members in violation of employees' rights pursuant to Labor Code §§ 2100 et. seq.  TESLA MOTORS, INC. had a duty to ensure its production demands did not interfere or prevent Plaintiff' and Class Members' from complying with laws regarding meal periods, rest periods, use of bathroom facilities, and/or expose them to safety and Cal/OSHA hazards.  TESLA MOTORS, INC. willfully, knowingly, and intentionally failed to establish legally compliant quotas, placing profits above concern for employee safety.

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

58.    **WARN Act:** Until their termination by Defendant, the Plaintiff and other similarly situated persons were employees of Defendant who worked at or reported to any facility, warehouse, logistics center, distribution center, manufacturing facility, and/or production facility and who were terminated as part of or as a reasonably foreseeable result of mass layoffs ordered and carried out by Defendant on or about April 14, 2024, and thereafter.

59.    Upon information and belief, Defendant, as a single employer, owned and operated the Facility at all times relevant to this action.

60.    On or about April 14, 2024, and thereafter, Defendant, as a single employer, ordered the termination of the Plaintiff's employment together with the termination of more than 10% of its employees who worked at or reported to the Facility as part of plant closings for which they were entitled to receive 60 days advance written notice.

61.    Upon information and belief, at or about the time that Plaintiff was discharged on or about April 14, 2024, Defendant discharged approximately 14,000 other employees at the facility (the "other Similarly Situated Former Employees") without cause on their part.

62.    On information and belief, Defendant exercised complete control over the labor decisions concerning Plaintiff and the Class Members' employment, including the decision to terminate their employment on or about April 14, 2024, respectively, and thereafter.

63.    On information and belief, the decision to terminate Plaintiff and Class Members without providing proper WARN and California WARN notice was made by Defendant.

64.    **Unpaid Wages**: Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Class Members were entitled to receive at least minimum, regular, overtime, and double times wages and that they were not receiving minimum, regular, overtime, and double time wages for all work that was required to be performed. Furthermore, Defendants knew that on January 1, 2022, they must provide Plaintiff and Class Members a written description of Defendants' quota production demands and failed to do so.

65.    Plaintiff is informed and believes, and thereon alleges, that during the Class Period, Plaintiff and Class Members regularly worked in excess of eight (8) hours in a workday and/or 40 hours in a workweek and/or in excess of 12 hours in a workday.  On information and belief,

1    Defendants did not accurately or appropriately compensate Plaintiff and Class Members for the

2    hours worked.

3        66.    Plaintiff is informed and believes, and thereon alleges, that in violation of the Labor

4    Code and IWC Wage Orders, Defendants rounded, edited, and/or input the incorrect times for

5    Plaintiff' and Class Members' start times to reflect the scheduled start time instead of the actual start

6    time which should have included time spent arriving early to work, and performing other

7    preliminary duties and postliminary duties, and otherwise preparing for the workday.  Defendants

8    also rounded Plaintiff' and Class Members' end time to reflect the scheduled end time despite

9    working past those hours.  As such, Plaintiff and Class Members performed work off-the-clock

10   without compensation.  Plaintiff and Class Members were not paid a split shift premium and were

11   required to work shifts which were sufficiently long and were counted as "meal period" and "rest

12   periods."   While under the control of TESLA MOTORS, INC. they remained under the control of

13   Defendants and were not paid the split shift interval.  Defendants failed to compensate Plaintiff and

14   Class Members for all hours worked for work performed off-the-clock and for reporting time pay,

15   and overtime pay.  Defendants failed to pay the appropriate and correct legal wages for bonus pay

16   (i.e., premium pay, sick pay, vacation pay, overtime and double overtime) and vacation pay

17   according to California law.

18       67.    **Meal Period Violations**: Plaintiff is informed and believes, and thereon alleges, that

19   Defendants knew or should have known that Plaintiff and Class Members were entitled to receive a

20   timely, off-duty, uninterrupted 30-minute meal period for every five hours of work, or payment of

21   one additional hour of pay at their regular rate of pay when they did not receive a compliant meal

22   period.  Defendants enacted quotas that prevented Plaintiff and Class Members from taking lawful

23   meal periods.  During the Class Period, Plaintiff and Class Members regularly worked in excess of

24   five (5) and/or 10 hours per workday.  In violation of the Labor Code and IWC Wage Orders,

25   Plaintiff and Class Members did not receive compliant meal periods.  As such, Defendants failed to

26   provide all required meal periods, including second meal periods when Plaintiff and Class Members

27   worked in excess of 10 hours per workday.  Even though Plaintiff and other Class Members were

28   prevented from taking compliant meal periods, Defendants failed to provide them with premium

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

1  pay for every non-compliant meal period.  Defendants' quota requirements were unlawful and
2  prevented employees from complying with California laws regarding meal periods.

3       68.   **Rest Period Violations:** Defendants tracked and maintained a record of each and
4  every rest period that violated California law including when Plaintiff or Class Members worked up
5  to 10 - 12 hours in a workday.  Defendants' quota demands were unreasonable and pressured
6  Plaintiff and Class Members to work through rest periods.  Plaintiff is informed  and believes, and
7  thereon alleges, that Defendants knew or should have known that Plaintiff and Class Members were
8  entitled to receive a ten-minute, off-duty, uninterrupted rest period for every four (4) hours worked,
9  or major fraction thereof, or payment of one (1) additional hour of pay at their regular rate of pay
10  when they were not permitted to take a compliant rest period.  Defendants enacted quotas that
11  prevented Plaintiff and Class Members from taking lawful rest periods.  During the Class Period,
12  Plaintiff and Class Members regularly worked in excess of four (4) hours or major fraction thereof.
13  In violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members were not
14  permitted to take compliant rest breaks, due to Defendants' unlawful policy and practice to favor
15  production goals over employee rights.  Consequently, Plaintiff and Class Members were not
16  authorized or permitted to take rest breaks, including first, second, and third rest breaks.  Defendants
17  failed to pay Plaintiff and Class Members one additional hour of pay at their regular rate of pay
18  when they did not receive a compliant rest break.  On information and belief, Defendants also failed
19  to provide recovery periods to employees.  Defendants' quota requirements were unlawful and
20  prevented employees from complying with California laws regarding recovery and rest periods.

21       69.   **Recovery Period Violations:** Defendants violated California law by refusing to
22  provide recovery periods and/or maintaining written policies that were distributed or disseminated
23  to Plaintiff and putative Class Members.  Defendants' quota demands were unreasonable and
24  pressured Plaintiff and Class Members to work through recovery periods when needed or not to
25  request them for fear of retaliation.  Plaintiff is informed and believes, and thereon alleges, that
26  Defendants knew or should have known that Plaintiff and Class Members were entitled to receive
27  unlimited recovery periods of no less than 5 minutes for cooling down.  Defendants enacted quotas
28  that prevented Plaintiff and Class Members from taking lawful recovery periods.  Consequently,

-23-

Plaintiff and Class Members were not authorized or permitted to take recovery periods. Defendants failed to pay Plaintiff and Class Members one additional hour of pay at their regular rate of pay when they did not receive a compliant recovery period. Defendants' quota requirements were unlawful and prevented employees from complying with California laws regarding recovery periods.

70. **Waiting Time Penalties:** Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Waiting Time Subclass Members who separated from their employment with Defendants during the statutory period were entitled to timely payment of all wages due. In violation of the Labor Code, Plaintiff and Waiting Time Class Members did not receive payment of all wages owed upon separation within the permissible time period due to, *inter alia*, Defendants' failure to pay all wages and meal and rest period premiums to Plaintiff and Class Members.

71. **Wage Statement Violations:** Plaintiff is informed and believes, and thereon alleges that Defendant knew or should have known that Plaintiff and Class Members were entitled to receive complete and accurate wage statements and failed to abide by the requirements of Labor Code § 226 to pay and record each premium pay and meal and rest period violation which Defendants tracked and recorded. In violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members were not furnished with complete and accurate wage statements that show all of the information required by Labor Code § 226, including, but not limited to, the gross and net wages earned, the total hours worked, all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate.

72. Labor Code § 226(f) and (g) state as follows:

> *(f) A failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth in subdivision (c) entitles the current or former employee or the Labor Commissioner to recover a seven-hundred-fifty-dollar ($750) penalty from the employer.*

> *(h) An employee may also bring an action for injunctive relief to ensure compliance with this §, and is entitled to an award of costs and reasonable attorney's fees.*

73.    Labor Code § 226.7 states as follows:

*(a) As used in this §, "recovery period" means a cooldown period afforded an employee to prevent heat illness.*

*(b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.*

*(c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.*

*(d) A rest or recovery period mandated pursuant to a state law, including, but not limited to, an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, shall be counted as hours worked, for which there shall be no deduction from wages. This subdivision is declaratory of existing law.*

74.    **Temperature Controls:** The IWC Wage Orders require temperature to be maintained at comfortable levels. Section 15 of the Wage Orders states the following:

*15. <u>Temperature</u>*

*(A) The temperature maintained in each work area shall provide reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed.*

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

*(B) If excessive heat or humidity is created by the work process, the employer shall take all feasible means to reduce such excessive heat or humidity to a degree providing reasonable comfort. Where the nature of the employment requires a temperature of less than 60 (degrees), a heated room shall be provided to which employees may retire for warmth, and such room shall be maintained at not less than 60 degrees.*

*(C) A temperature of not less than 68(degrees) shall be maintained in the toilet rooms, resting rooms, and change rooms during hours of use.*

*(D) Federal and State energy guidelines shall prevail over any conflicting provision of this §.*

75.    Pursuant to § 15(b), Defendant has and have always had an affirmative duty to prevent and reduce excessive heat or humidity created by thew work environment, location, department or any other area of work that creates excessive hear and where employees are exposed to heat illness thereby requiring safety measures including, but not limited, to recovery periods. Defendant, however, has no written policy regarding preventative measures as required by California law or as required by Labor Code § 226.7.

## **FIRST CAUSE OF ACTION**

### **FAILURE TO PAY ALL WAGES**

#### **(Plaintiff and the Class Against all Defendants)**

76.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

77.    Defendants failed to pay Plaintiff and Class Members all non-discretionary bonuses and wages (including minimum, regular, overtime, and double time wages) for all hours worked, including the correct legal minimum wage, overtime and double overtime rate.

78.    Defendants failed to pay Plaintiff and Class Members the correct legal wages for all hours worked, including the correct legal minimum wage, overtime and double overtime rate,

premium wages, sick pay, and vacation pay when Defendants paid bonuses.

79.   Defendants failed to pay or vest sick pay wages in accordance with California law.

80.   Defendants failed to pay vacation pay law in California pursuant to Labor Code § 227.3.

81.   At all times herein relevant, Defendants had a duty to comply with Labor Code §§ 204, 206, 227.3 ,510, 1182.12, 1194, 1194.2, 1197, 1198, 2802, the applicable IWC Wage Orders, and all applicable local minimum wage ordinances in effect throughout California.

82.   Labor Code § 204 and the IWC Wage Orders require timely payment of all wages owed on regularly scheduled paydays at least twice during each calendar month, on days designated in advance by the employer as the regular paydays. All wages earned in excess of the normal work period must be paid no later than the payday for the next regular payroll period.

83.   Labor Code § 206 provides that in case of a dispute over wages, the employer shall pay, without condition and promptly under the Labor Code all wages conceded due, leaving to the employee all remedies he/he is otherwise entitled to as to any balance claimed.

84.   The IWC Wage Orders define "hours worked" as "the time during which an employee is subject to the control of an employer and includes all time the employee is suffered or permitted to work, whether or not required to do so" including nonproductive time and legal wages when bonusses were paid.

85.   Defendants failed to pay the correct reporting time pay in accordance with California law.

86.   Labor Code § 510 and the IWC Wage Orders require that employers pay employees for all overtime hours at a rate of one and one-half times the employee's regular rate of pay for hours worked in excess of eight hours in one workday, 40 hours in one workweek, and after the first eight hours on the seventh consecutive workday in one work week.  Labor Code § 510 and the IWC Wage Orders further require that employers pay employees double their regular rate of pay for hours work in excess of 12 hours in a workday and after eight hours on the seventh consecutive workday in one workweek. Labor Code § 510 requires payment of overtime wages at one- and one-half times the "regular rate of pay," including split shift premium pay, reporting time pay, sick pay, and vacation

1  pay.

2      87.    Labor Code § 1182.12 sets forth the minimum hourly wage that must be paid to all

3  employees in California for all hours worked. Local minimum wage ordinances may provide for

4  higher minimum wage rates that must be paid to employees for all hours worked in those locales

5  where each local ordinance is in effect.  Labor Code § 1197 affirms that it is unlawful to pay less

6  than the state or local minimum wage, whichever is higher, for any hour of work.

7      88.    Labor Code § 1194 requires that employers pay employees at least the legal

8  minimum wage rate for all hours worked, notwithstanding any agreement to work for a lesser wage.

9  Labor Code § 1194 further authorizes any employee receiving less than the legal minimum wage

10  applicable to the employee to recover in a civil action the unpaid balance of the full amount of

11  wages, along with interest thereon, reasonable attorneys' fees and costs of suit.

12      89.    Labor Code § 1194.2 authorizes the recovery of liquidated damages in an amount

13  equal to the wages unlawfully unpaid and interest thereon for unpaid wage violations.

14      90.    Labor Code § 1198 prohibits employers from employing for longer hours or less

15  favorable conditions than those set forth in the Labor Code, IWC Wage Orders, or as otherwise set

16  by the Labor Commissioner.

17      91.    In violation of California law, Defendants have knowingly and willfully refused to

18  perform their obligations and compensate Plaintiff and Class Members for all wages earned as

19  alleged above.

20      92.    Defendant' failure to pay Plaintiff and Class Members all earned minimum and

21  regular wages in accordance with Labor Code §§ 204, 206, 510, 1182.12, 1194, 1194.2, 1197, 1198,

22  the applicable IWC Wage Orders, and all applicable local minimum wage ordinances in effect

23  throughout California, Plaintiff and Class Members are entitled to recover the full amount of unpaid

24  wages, liquidated damages, prejudgment interest, and statutory penalties, along with attorneys' fees

25  and costs in amounts that will be established at trial.

26                    **SECOND CAUSE OF ACTION**

27                    **MEAL PERIOD VIOLATIONS**

28                **(Plaintiff and the Class Against all Defendants)**

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

93.     Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

94.     At all relevant times, Defendants had a duty to comply with Labor Code §§ 226.7 512, 2100-2112, and the applicable IWC Wage Orders.

95.     Labor Code § 512 and the IWC Wage Orders prohibit an employer from employing any person for a work period of more than 5 hours per day without providing the employee with a meal period of not less than 30 minutes (commencing before the employee's fifth hour of work), except that if the total work period per day is no more than 6 hours, the meal period may be waived by mutual consent of the employer and employee. A second meal period of not less than 30 minutes is required if an employee works more than 10 hours per day and must begin before the employee's tenth hour of work, except if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and employee, but only if the first meal period was not waived.  An employer must relieve an employee of all duties during meal periods.

96.     The applicable IWC Wage Orders state that "[u]nless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked."  Defendant required Plaintiff and putative Class Members to remain on call or engage in productive work during meal periods in violation of Labor Code § 2103.

97.     Labor Code § 226.7(b) and the IWC Wage Orders prohibit an employer from requiring any employee to work during a meal period mandated by any California statute, regulation, standard or order.  If an employer fails to provide an employee with a meal period in accordance with state law, Labor Code § 226.7(c) and the IWC Wage Orders require that the employer pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal period is noncompliant.

98.     During the Class Period, Plaintiff and Class Members did not receive compliant meal periods when working more than five (5) and/or 10 hours per day because Defendants provided only about two (1) rest breaks per workweek. As such, Defendants failed to provide Plaintiff and Class Members with all required meal periods, including second meal periods.

99.     During the relevant time period, Defendants failed to pay Plaintiff and Class

1 | Members meal period premiums for noncompliant meal periods pursuant to Labor Code § 226.7(b)

2 | and the applicable IWC Wage Order.

3 |      100.    As a result of Defendants' failure to provide compliant meal periods and pay meal

4 | period premiums to Plaintiff and Class Members in accordance with the IWC Wage Orders and

5 | Labor Code §§ 226.7 and 512, Plaintiff and Class Members suffered and continue to suffer a loss of

6 | wages and compensation.

7 |      101.    Because Plaintiff and Class Members were and/or are entitled to such meal periods

8 | or "premium pay" in lieu thereof, they are entitled to such payment per shift in an amount according

9 | to proof. To the extent such unpaid premiums are deemed unpaid wages, Plaintiff will also seek

10 | pre- and post-judgment interest as provided by law at 10% per annum, in an amount according to

11 | proof.

12 |      102.    Pursuant to the Code of Civil Procedure § 1021.5, Plaintiff will also seek attorneys'

13 | fees and costs from Defendants in an amount subject to proof and approved by the Court.

14 | **<u>THIRD CAUSE OF ACTION</u>**

15 | **REST PERIOD VIOLATIONS**

16 | **(Plaintiff and the Class Against all Defendants)**

17 |      103.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as

18 | though fully set forth herein.

19 |      104.    At all relevant times, Defendants had a duty to comply with Labor Code §§ 226.7,

20 | 2100 *et.seq.* and the applicable IWC Wage Orders. Defendant required Plaintiff and putative Class

21 | Members to remain on call or engage in productive work during rest periods in violation of Labor

22 | Code § 2103.

23 |      105.    The IWC Wage Orders require employers to authorize and permit all employees to

24 | take 10-minute duty-free rest periods for each four hours worked, or major faction thereof.

25 |      106.    If an employer fails to provide an employee with a rest period in accordance with

26 | California law, Labor Code § 226.7(c) and the IWC Wage Orders require that the employer pay the

27 | employee one additional hour of pay at the employee's regular rate of compensation for each

28 | workday that the rest period is noncompliant.

107.   During the relevant time period, Defendants did not implement a compliant rest break policy or practice by providing only one (1) break per workday. As such, Defendants failed to provide Plaintiff and Class Members with all required rest periods, including second and third rest periods.

108.   During the relevant time period, Defendants failed to pay Plaintiff and Class Members rest period premiums for noncompliant rest periods pursuant to Labor Code § 226.7(b) and the applicable IWC Wage Order.

109.   As a result of Defendants' failure to provide compliant rest periods and pay rest period premiums to Plaintiff and Class Members in accordance with the IWC Wage Orders and Labor Code §§ 226.7 and 516, Plaintiff and Class Members suffered and continue to suffer a loss of wages and compensation.

110.   Because Plaintiff and Class Members were and/or are entitled to such rest periods or "premium pay" in lieu thereof, they are entitled to such payment per shift in an amount according to proof.  To the extent such unpaid premiums are deemed unpaid wages, Plaintiff will also seek pre- and post-judgment interest as provided by law at 10% per annum, in an amount according to proof.

111.   Pursuant to the Code of Civil Procedure § 1021.5, Plaintiff will also seek attorneys' fees and costs from Defendants in an amount subject to proof and approved by the Court.

**FOURTH CAUSE OF ACTION**

**FAILURE TO PROVIDE RECOVERY PERIODS**

**(Plaintiff and the Class Against all Defendants)**

112.   Plaintiff realleges and incorporates by reference all preceding paragraphs herein, as if fully alleged.

113.   Labor Code § 226.7 provides that employers must authorize and permit non-exempt employees to take recovery periods.

114.   Labor Code § 226.7, subdivision (b), provides that if an employer fails to provide employees with recovery periods in accordance with this §, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the

1   recovery period is not provided.

2        115.    Due to Defendants' uniform policies and practices, Plaintiff and Plaintiff Class

3   consistently worked without receiving a duty-free, uninterrupted recovery period as required by the

4   Labor Code.  Plaintiff and Plaintiff Class did not receive premium pay for the unprovided recovery

5   periods.

6        116.    Defendant failed to take any affirmative action to reasonably make recovery periods

7   available to Plaintiff and Plaintiff Class throughout the Class Period.

8        117.    Plaintiff and Plaintiff Class are entitled to damages in an amount equal to one (1)

9   hour of wages per missed rest break, in a sum to be proven at trial. Pursuant to Labor Code § 218.5,

10  Code of Civil Procedure § 1021.5, and any other provision of law, Plaintiff requests the court award

11  reasonable attorneys' fees and costs incurred by them in this action.

12  //

13  **FIFTH CAUSE OF ACTION**

14  **FAILURE TO PROVIDE PERSONNEL RECORDS**

15  **(Plaintiff and the Class against All Defendants)**

16       118.    Plaintiff realleges and incorporates by reference all preceding paragraphs herein, as

17  if fully alleged.

18       119.    California Labor Code § 1198.5(a) states, "Every current and former employee, or

19  his or her representative, has the right to inspect and receive a copy of the personnel records that the

20  employer maintains relating to the employee's performance or to any grievance concerning the

21  employee."

22       120.    California Labor Code § 1198.5(b)(1) states, in pertinent part, "The employer shall

23  make the contents of those personnel records available for inspection to the current or former

24  employee, or his or her representative…not later than 30 calendar days from the date the employer

25  receives a written request[.]"An employer must also provide attendance records in response to a

26  Labor Code § 1198.5 request.1 51. Per the DLSE, "[c]ategories of records that are generally

27  considered to be personnel records are those that are used or have been used to determine an

28  employee's qualifications for promotion, additional compensation, or disciplinary action, including

-32-

termination." Such records include but are not limited to:

(a) Applications for employment;

(b) Payroll authorization forms;

(c) Notices of commendation, warning, discipline, and/or termination;

(d) Notices of layoff, leave of absence, and vacation;

(e) Notices of wage attachment or garnishment;

(f) Education and training notices and records;

(g) Performance appraisals/reviews; and,

(h) Attendance records

121.    California Labor Code § 1198.5(k) states, "If an employer fails to permit a current or former employee, or his or her representative, to inspect or copy personnel records within the times specified in this §, or times agreed to by mutual agreement as provided in this §, the current or former employee or the Labor Commissioner may recover a penalty of seven hundred fifty dollars ($750) from the employer."

122.    California Labor Code § 1198.5(l) states, "A current or former employee may also bring an action for injunctive relief to obtain compliance with this § and may recover costs and reasonable attorney's fees in such an action."

123.    Upon information and belief, Defendants instituted a uniform and systematic practice of denying current and/or former employees the right to inspect and receive a complete copy of personnel records required to be maintained and produced under § 1198.5.

124.    Plaintiff requested her personnel file, among other items, via her legal Counsel in accordance with Labor Code § 1198.5(b)(1).

125.    Per Labor Code § 1198.5(b)(1), Defendants were required to produce Plaintiff' personnel records to their legal counsel within 21 or 30-days from the date of the request.

126.    Defendants failed to produce Plaintiff' complete personnel records and attendance records within the legally prescribed time frame.   Plaintiff and similarly situated Class Members are entitled to a $750.00 penalty plus reasonable attorney's fees and costs, and injunctive relief, from Defendants for this violation per Labor Code 1198.5(k) and (l).

127.    Plaintiff also requested the disclosures pursuant to Labor Code § 2104.  More than 15 days have passed, and the disclosures have not been provided.

128.    As of the writing of this complaint, Defendants has failed to comply with Labor Code §§ 2100 *et. seq.*

129.    Defendants' policy (Defendants' HR and its third-party service providers require former employees to call, email, take action in addition to what is required by the Labor Code) as alleged herein, is illegal on its face.  On information and belief, Defendants enforces this illegal policy against former employees and has engaged in this illegal conduct throughout the Class Period.

130.    As such, Plaintiff and Class Members are forced to both file a lawsuit and/or file for injunctive relief to compel Defendants to comply with California law pursuant to Labor Code §§ 2100 - 2112.

131.    Plaintiff and Plaintiff Class are entitled to damages in an amount equal to $750.00 plus attorney fees and costs, injunctive relief and other damages in a sum to be proven at trial. Pursuant to Labor Code §§ 226(f), 218.5, Code of Civil Procedure § 1021.5, and any other provision of law, Plaintiff requests the court award reasonable attorneys' fees and costs incurred by them in this action.

## SIXTH  CAUSE OF ACTION

### FAILURE TO PRODUCE SIGNED RECORDS LABOR CODE § 432

### (Plaintiff and Class Against Defendants)

132.    Plaintiff repeats and incorporates by reference all allegations in this Complaint as though fully set forth herein.

133.    California labor Code § 432 states, "If an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request."

134.    Upon information and belief, Defendants instituted a uniform and systematic practice of denying current and/or former employees the right to inspect and receive a complete copy of personnel records required to be maintained and produced under § 432.

135.    Plaintiff requested a copy of her signed instrument and records per Labor Code §

432. While Defendant has produced some signed records, Plaintiff asserts the production was incomplete and thus violates Labor Code § 432.

136.    Defendants seeks to illegally dismiss Plaintiff' and Class Members' claims related to Labor Code §§ 2100 *et. seq*. However, Defendants failed to produce any evidence that it complies with the written quota disclosures of the quota law codes and which Defendants will be unable to produce a signed compliant record.  The records have been requested and Defendants have not complied with the law.

137.    Defendants' policies and practices are in violation of Labor Code § 432. Plaintiff and similarly situated Class Members are entitled to injunctive relief to address these violative policies.

## SEVENTH CAUSE OF ACTION

### FAILURE TO IMPLEMENT HEAT PREVENTION MEASURES & MAINTAIN LEGAL TEMPERATURE CONTROLS

### (Plaintiff and Class Against Defendants)

138.    Plaintiff repeats and incorporates by reference all allegations in this Complaint as though fully set forth herein.

139.    Under California law, the workplace should not be a source of injury or illness of threaten the Lives of those who work there, (Cal, Code Reg. tit. 8, § 3203.). Per Senate Bill 1167 signed and approved by Governor Jerry Brown and later codified as California Labor Code § 6720, the California Division of Occupational Safety and Health (Cal/OSHA) shall propose an indoor heat illness standard by January 1, 2019. In Cal/OSHA's most recent January 29, 2019, revised draft standard, the proposed regulation would apply to "all indoor work areas where the temperature equals or exceeds 82 degrees Fahrenheit when employees are present." The U.S. Department of Labor's Division of Occupational Safety and Health Administrator (OSHA) also recommends office temperature control in the range of 68° F to 76° F

140.    On information and belief, DEFENDANT violated every aspect of IWC Wage Order § 15. Plaintiff and other Class Members being subjected to excessive heat or cold in the workplace. Plaintiff worked in a facility situated in a location with recorded temperatures exceeding 100 F and dipping below 30 F. DEFENDANT failed to provide reasonable temperature

regulation including adequate air conditioning, heating, insulation, and/or ventilation. DEFENDANT failed to provide reasonably comfortable indoor temperatures. On information and belief, where Defendant's business operations created indoor climates less than 60 F, such as areas in the warehouse designed to keep perishables like food, Defendant failed to provide appropriate heated rooms to retire for warmth. Defendant also failed to maintain a temperature of not less than 68° in their toilet rooms, resting rooms, and/or change rooms during hours of use.

141.    Plaintiff and Class Members were prevented from complying with health, CalOSHA, and safety laws:  Defendants failed to maintain temperature controls as required by Labor Code §§ 2102 *et. seq.,* and the applicable IWC Wage Order(s).  As such, Plaintiff and, on information and belief, Class Members suffered exhaustion, dehydration and other physiological injuries because they were required to meet Defendants' unlawful quotas and prevented them from complying with the IWC Wage Orders § 15 which states:

> ### *15. TEMPERATURE*
>
> *(A) The temperature maintained in each work area shall provide reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed.*
>
> *(B) If excessive heat or humidity is created by the work process, the employer shall take all feasible means to reduce such excessive heat or humidity to a degree providing reasonable comfort. Where the nature of the employment requires a temperature of less than 60° F., a heated room shall be provided to which employees may retire for warmth, and such room shall be maintained at not less than 68°.*
>
> *(C) A temperature of not less than 68° shall be maintained in the toilet rooms, resting rooms, and change rooms during hours of use.*
>
> *(D) Federal and State energy guidelines shall prevail over any conflicting provision of this §.*

142.    Pursuant to § 15(b), Defendant has and have always had an affirmative duty to prevent and reduce excessive heat or humidity created by the work environment, location, department or any other area of work that creates excessive hear and where employees are exposed

to heat illness thereby requiring safety measures including, but not limited, to recovery periods. Defendant, however, has no written policy regarding preventative measures as required by California, by Labor Code § 226.7, and/or the recently enacted OSHA standards requiring employers to take affirmative measures to prevent heat illness for indoor employees pursuant to California Code of Regulations, Title 8, § 3395 Heat Illness Prevention, Labor Code §§ 6308, 6317 and any other statutes conferring enforcement powers upon the Division.

143.    Furthermore, it is a violation of Labor Code §§ 98.6, 98.7, 6310, 6311, and 6312 to discharge or discriminate in any other manner against employees for exercising their rights under this or any other provision offering occupational safety and health protection to employees. Throughout the time periods when these laws were in effect, Defendants have actively violated them and pressured, and/or discouraged employees from taking advantage of the Labor Code, Cal OSHA regulations and California law in favor of meeting excessive quotas.

144.    Furthermore, it is a violation of Labor Code §§ 98.6, 98.7, 6310, 6311, and 6312 to discharge or discriminate in any other manner against employees for exercising their rights under this or any other provision offering occupational safety and health protection to employees. Throughout the time periods when these laws were in effect, Employer has actively violated them and pressured, and/or discouraged employees from taking advantage of the Labor Code, Cal OSHA regulations and California law in favor of meeting excessive quotas.

145.    Plaintiff, Class Members, and Class Members are entitled to injunctive relief and recovery of attorneys' fees and costs incurred.

## EIGHTH CAUSE OF ACTION

### FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS

#### (Plaintiff and the Class Against all Defendants)

146.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

147.    At all relevant times, Defendants had a duty to comply with Labor Code § 226.

148.    Labor Code § 226(a) requires that, semimonthly or at the time of each payment of wages, employers must furnish each employee with an accurate itemized wage statement in writing

that accurately shows (1) gross wages earned, (2) total number of hours worked, (3) the number of any piece-rate units earned and all applicable piece rates, (4) all deductions made from wages, (5) net wages earned, (6) the inclusive dates of the pay period, (7) the name and last four digits or employment identification number of the employee, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect and the corresponding number of hours worked at each hourly rate.  Defendants failed to include in wage statements all hours worked and accumulated vacation, sick pay, split shifts and record reporting time pay.

149.    Labor Code § 226(e)(1) authorizes an employee suffering injury as a result of a knowing and intentional failure by an employer to provide an accurate itemized wage statement to recover the greater of all actual damages or $50 for the initial pay violation and $100 for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee, in addition to an award of costs and attorneys' fees.

150.    During the relevant time period, Defendants knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members.  The deficiencies include, among other things, Defendants' failure to correctly state the gross and net wages earned, the total hours worked, all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate.

151.    As a result of Defendants' violations of California Labor Code § 226(a), Plaintiff and Class Members have suffered injury and damage to their statutorily protected rights.  Specifically, Plaintiff and Class Members have been injured by Defendants' intentional violation of California Labor Code § 226(a) because they were denied both their legal right to receive, and their protected interest in receiving, accurate itemized wage statements under California Labor Code § 226(a).  Plaintiff had to file this lawsuit in order to determine the extent of the underpayment of wages, thereby causing Plaintiff to incur expenses and lost time.  Plaintiff would not have had to engage in these efforts and incur these costs had Defendants provided the accurate wages earned.  This has also delayed Plaintiff' ability to demand and recover the underpayment of wages from Defendants.

152.    Defendants' violations of California Labor Code § 226(a) prevented Plaintiff and Class Members from knowing, understanding and disputing the wages paid to them, and resulted in

an unjustified economic enrichment to Defendants. As a result of Defendants' knowing and intentional failure to comply with California Labor Code § 226(a), Plaintiff and Class Members have suffered an injury, and the exact amount of damages and/or penalties is all in an amount to be shown according to proof at trial.

153.    Plaintiff and Class Members are also entitled to injunctive relief under California Labor Code § 226(h), compelling Defendants to comply with California Labor Code § 226, and seek the recovery of attorneys' fees and costs incurred in obtaining this injunctive relief.

### NINTH CAUSE OF ACTION

### WAITING TIME PENALTIES

### (Plaintiff and the Class Against all Defendants)

154.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

155.    At all relevant times, Defendants had a duty to comply with Labor Code §§ 201, 202, and 203. Defendants failed to comply with these final paycheck requirements with respect to Plaintiff and Waiting Time Subclass Members.

156.    Labor Code § 201 requires that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

157.    Labor Code § 202 requires that if "an employee not having a written contract for a definite period" quits, the employee's wages shall become due and payable no later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

158.    Labor Code § 203 provides that if an employer willfully fails to pay, without abatement or reduction, any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced, but that the wages shall not continue for more than 30 days per employee.

159.    During the relevant time period, Defendants willfully failed to pay Plaintiff and Waiting Time Subclass Members all their earned wages upon termination including, but not limited

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

to, minimum, regular, overtime, and double time compensation, and premium compensation either at the time of discharge or within 72 hours of leaving Defendant' employ.

160.    As a result of Defendants' failure to timely pay all wages owed to Plaintiff and Waiting Time Subclass Members in accordance with Labor Code §§ 201, 202 and 203, Plaintiff and Waiting Time Subclass Members are entitled to recover waiting time penalties, prejudgment interest, attorneys' fees, and costs in amounts that will be established at trial.

## TENTH CAUSE OF ACTION
### FAILURE TO REIMBURSE FOR BUSINESS EXPENSES
### (Plaintiff and the Class Against all Defendants)

161.    Plaintiff incorporate all previous paragraphs of this Complaint as though fully set forth herein.

162.    Pursuant to Labor Code §2802, Defendants are required to reimburse Plaintiff for business expenses incurred in the direct consequences of her discharge of her duties for Defendants, including expenses associated with the purchase of equipment.

163.    Within the four years before the filing of this Complaint and continuing until the present time, Plaintiff and Class Members have been required to incur expenses as a condition of and in the discharge of their employment duties and has thereby incurred expenses for these items.

164.    Defendants have failed to reimburse Plaintiff and Class Members for said expenses.

165.    Pursuant to Labor Code, § 2802, subsection (a), Plaintiff will seek to recover work related expenses for himself and the putative class. Pursuant to Labor Code, § 2802, subsection (b), Plaintiff will seek attorneys' fees and litigation costs in an amount subject to proof and approved by the Court.

## ELEVENTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S QUOTA LAW
### (Plaintiff and the Class Against all Defendants)

166.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

167.    At all relevant times, Defendants had a duty to comply with Labor Code §§ 2100 *et*

-40-

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

*seq.*

168.    California's quota laws require the Defendants to implement and maintain quota and production demands consistent with Labor Code §§ 2100 – 2112.  The code §§ require the following:

**LABOR CODE § 2100**

(d) *"Employee" means a nonexempt employee who works at a warehouse distribution center.*

(e)

(1) *"Employee work speed data" means information an employer collects, stores, analyzes, or interprets relating to individuals employee's performance of a quota, including, but not limited to, quantities of tasks performed, quantities of items or materials handled or produced, rates or speeds of tasks performed, measurements or metrics of employee performance in relation to a quota, and time categorized as performing tasks or not performing tasks.*

(2) *"Employee work speed data" does not include qualitative performance assessments, personnel records, or itemized wage statements pursuant to § 226, except for any content of those records that includes employee work speed data as defined in this part.*

(f) *"Employer" means a person who directly or indirectly, or through an agent or any other person, including through the services of a third-party employer, temporary service, or staffing agency or similar entity, employs or exercises control over the wages, hours, or working conditions of 100 or more employees at a single warehouse distribution center or 1,000 or more employees at one or more warehouse distribution centers in the state. For purposes of this definition, all employees of an employer's commonly controlled group, as that term is defined in § 25105 of the Revenue and Taxation Code, shall be counted in determining the number of employees employed at a single warehouse distribution center or at one or more warehouse distribution centers in the state.*

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

1    (h) "Quota" means a work standard under which an employee is

2    assigned or required to perform at a specified productivity speed, or perform a

3    quantified number of tasks, or to handle or produce a quantified amount of material,

4    within a defined time period and under which the employee may suffer an adverse

5    employment action if they fail to complete the performance standard.

6    (1) "Warehouse distribution center" means an establishment as

7    defined by any of the following North American Industry Classification System

8    (NAICS) Codes, however that establishment is denominated:

9    **LABOR CODE § 2102**

10    An employee shall not be required to meet a quota that prevents compliance

11    with meal or rest periods, use of bathroom facilities, including reasonable travel time

12    to and from bathroom facilities, or occupational health and safety laws in the Labor

13    Code or division standards. An employer shall not take adverse employment action

14    against an employee for failure to meet a quota that does not allow a worker to

15    comply with meal and rest periods, or occupational health and safety laws in the

16    Labor Code or division standards, or for failure to meet a quota that has not been

17    disclosed to the employee pursuant to § 2101.

18    **LABOR CODE § 2103**

19    (b) Notwithstanding subdivision (a), consistent with existing law, meal and

20    rest breaks are not considered productive time unless the employee is required to

21    remain on call.

22    169.    Defendants' violations of California Labor Code §§ 2100 - 2112 prevented Plaintiff

23    and Class Members from knowing, understanding and disputing the wages paid to them, meal and

24    period violations, inability to take restroom breaks, and exposed them to unreasonable health

25    hazards and resulted in an unjustified economic enrichment to Defendants.  As a result of

26    Defendants' knowing and intentional failure to comply with California Labor Code § 2100 et. seq.,

27    Plaintiff and Class Members have suffered an injury, and the exact amount of damages and/or

28    penalties in an amount to be shown according to proof at trial.

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

170.    Plaintiff and Class Members are also entitled to injunctive relief under California Labor Code § 2108, compelling Defendants to comply with California Labor Code §§ 2100 et. seq., and seek the recovery of attorneys' fees and costs incurred in obtaining this injunctive relief.

## TWELVTH CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA WARN ACT, CAL. LAB. CODE § 1400, *et seq.*

### (Plaintiff and the Class Against all Defendants)

171.    Plaintiff re-alleges and incorporates all preceding paragraphs as if set forth in full herein.

172.    Tesla is an "employer" within the meaning of the California WARN Act, Cal. Lab. Code § 1400, et. seq.

173.    Tesla employed 75 or more persons within the preceding 12 months and is a "covered establishment" within the meaning of the California WARN Act, Cal. Lab. Code § 1400(a).

174.    Plaintiff and those he seeks to represent were at all relevant times "employees" within the meaning of the Cal. Lab. Code § 1400(h). Pursuant to the California WARN Act, California Labor Code § 1400, et seq., "employee" is defined as any person employed for at least six months of the twelve months preceding the date on which notice is required. Plaintiff and other Class Members were employed by Defendants for at least six months of the twelve months preceding the date on which the notice referred to herein was required. 53. The termination at the Facility constituted a "layoff," "mass layoff," or "termination" as defined in Cal. Lab. Code § 1400(c), (d), and (f) in that it was a permanent or temporary shutdown of a single site of employment that resulted in an employment loss for 50 or more employees. Upon information and belief, the shutdown will last longer than 30 days.

175.    The California WARN Act requires employers to provide 60-days' notice of any mass layoff, relocation, or termination to "the employees of the covered establishment covered by the order" under Cal. Lab. Code §1401(a)(1).

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

176.   On information and belief, prior to April 14, 2024, Defendant did not give any prior written notice of the layoff, mass layoff, or termination to any "employee," including Plaintiff and those he seeks to represent, as that term is defined in Cal. Lab. Code § 1400(b).

177.   Defendant violated the California WARN Act by failing to give timely written notice of the mass layoff as required by Cal. Lab. Code § 1401, which began on or about April 9, 2024. On information and belief, Tesla did not notify the State of California, Employment Development Department, or the chief elected officials of the city or county as required by Cal. Lab. Code § 1401 in advance of the "mass layoff" or "termination."

178.   As such, Plaintiff and those he seeks to represent are "employee[s]" within the meaning of the Cal. Lab. Code § 1400(h).

179.   The California WARN Act expressly permits a person to bring a civil action individually and on behalf of all those similarly situated to seek relief for violations of the provisions of Cal. Lab. Code § 1404.44.

180.   Moreover, Defendant's violations of the California WARN Act were not in good faith, and Defendant had no reasonable grounds for believing that the plant closing or mass layoff it ordered was not in violation of the notice requirements at Cal. Lab. Code § 1401.

**THIRTEENTH CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICES**

**(Plaintiff and the Class Against all Defendants)**

181.   Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

182.   Plaintiff brings this claim individually and on behalf of Class Members.

183.   Business & Professions Code § 17200 ("UCL") prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

184.   Business and Professions Code § 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of the UCL.

185.   Labor Code § 90.5, subdivision (a) states it is the public policy of California to

-44-

1   vigorously enforce minimum labor standards in order to ensure employees are not required to work

2   under substandard and unlawful conditions, and to protect employers who comply with the law from

3   those who attempt to gain competitive advantage at the expense of their workers by failing to comply

4   with minimum labor standards.

5       186.    Beginning at an exact date unknown to Plaintiff, but at least since the date four years

6   prior to the filing of this complaint, Defendants have committed acts of unfair competition as defined

7   by the Unfair Business Practices Act, by engaging in the unlawful, unfair, and fraudulent business

8   practices and acts described in this complaint, including, but not limited to, violations of Labor Code

9   §§ 201-204, 206, 226, 226.7, 227.3, 351, 510, 512, 1182.12, 1194, 1194.2, 1197, 1198, 1400 *et.*

10  *seq,*. 2100-2112, 2802.

11      187.    The violations of these laws and regulations, as well as of fundamental California

12  public policies protecting workers, serve as unlawful predicate acts and practices for purposes of

13  Business and Professions Code §§ 17200 *et seq*.

14      188.    As a result of these actions, Plaintiff, on information and belief, allege that

15  Defendants are able to unfairly compete with other comparable companies in the State of California

16  in violation of Business & Professions Code §§ 17000 *et. seq*. and §§ 17200 *et. seq*.  Due to these

17  unlawful, unfair, and/or fraudulent business practices, Defendants have gained a competitive

18  advantage over other comparable companies doing business in the State of California.

19      189.    The victims of these unlawful, unfair, and/or fraudulent business practices include,

20  but are not limited to, Plaintiff, putative class members, Defendants' competitors in the State of

21  California, and the general public.  Plaintiff is informed and believes, and thereon alleges, that

22  Defendants performed the above-mentioned acts with the intent of gaining an unfair competitive

23  advantage and thereby injuring Plaintiff, putative class members, Defendants' competitors, and the

24  general public.

25      190.    Plaintiff' success in this action will enforce important rights affecting the public

26  interest and public policy.

27      191.    Business and Professions Code §§ 17203 provides that a court may make such orders

28  or judgments as may be necessary to prevent the use or employment by any person of any practice

**FIRST AMENDED CLASS ACTION & PAGA COMPLAINT**

which constitutes unfair competition.  Injunctive relief is necessary and appropriate to prevent Defendants from repeating their unlawful, unfair, and fraudulent business acts and business practices alleged above.

192.    Business and Professions Code § 17203 provides that the Court may restore to any person in interest, any money or property that may have been acquired by means of such unfair competition.  Plaintiff and the Class Members are entitled to restitution pursuant to Business and Professions Code § 17203 for wages and payments unlawfully withheld from employees, including the fair value of the meal and rest periods and other losses alleged herein, during the four-year period prior to the filing of this complaint.  All remedies are cumulative pursuant to Business & Professions Code § 17205.

193.    Business and Professions Code § 17202 provides: "Notwithstanding § 3369 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition." Plaintiff and Class Members are entitled to enforce all applicable penalty provisions of the Labor Code pursuant to Business and Professions Code § 17202.

194.    Plaintiff requests injunctive relief pursuant to Business & Professions Code § 17203 to enjoin Defendants from continuing the unfair/unlawful business practices alleged herein.

195.    Plaintiff herein takes upon enforcement of these laws and lawful claims.  There is a financial burden involved in pursuing this action. The action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing Plaintiff to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to the Code of Civil Procedure § 1021.5 and others.

### NINTH CAUSE OF ACTION

### ENFORCEMENT OF THE PRIVATE ATTORNEYS GENERAL ACT OF 2004
### (Plaintiffs and Aggrieved Employees Against all Defendants)

196.    Plaintiffs hereby re-allege and incorporates by reference all paragraphs above as though fully set forth herein.

197.    Under Labor Code § 2699.3(a), a plaintiff may bring a cause of action under PAGA only after giving the LWDA and the employer notice of the Labor Code §§ alleged to have been

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

violated.

198.    Plaintiffs gave written notice of the specified provisions alleged to have been violated, including the facts and theories to support the alleged violations, as required by Labor Code § 2699.3. This written notice was provided via certified mail to Defendants and to the LWDA by electronically filing the notice via the Department of Industrial Relations' website on July 23, 2024 (LWDA-CM-1041259-24).

199.    Labor Code § 2699.3(a)(2)(C), "Notwithstanding any other provision of law, a plaintiff may as a matter of right amend an existing complaint to add a cause of action arising under this part at any time within 60 days of the time periods specified in this part."

200.    Pursuant to Labor Code § 2699(a), any provision of the Labor Code that provides for a civil penalty to be assessed and collected by the LWDA or any of its departments, divisions, commissions, boards, agencies or employees for violation of the code may, as an alternative, be recovered through a civil action brought by an Aggrieved Employees on behalf of himself and other current or former employees pursuant to the procedures specified in Labor Code § 2699.3.

201.    For all provisions of the Labor Code except those for which a civil penalty is specifically provided, Labor Code § 2699(f) imposes upon Defendants a penalty of one hundred dollars ($100.00) for each Aggrieved Employees per pay period for the initial violation and two hundred dollars ($200.00) for each Aggrieved Employees per pay period for each subsequent pay period in which Defendants violated these provisions of the Labor Code.

202.    Defendants' conduct violates numerous Labor Code §§, including, but not limited to, the following:

   a) Failure to Provide Rest Periods in Violation of Labor Code §§ 226.7 and applicable Wage Orders § 12;

   b) Failure to Provide Recovery Periods in Violation of Labor Code §§ 226.7;

   c) Failure to Implement Heat Prevention & Maintain Legal Temperature Controls;

   d) Failure to Provide Signed Records in violation of Labor Code § 432;

   e) Failure to Provide Personnel File in violation of Labor Code §§ 226, 1198.5,

   f) Failure to Provide written quota descriptions in violation of Labor Code § 2104;

-47-

g)  Failure to implement lawful quotas pursuant to Labor Code §§ 2100 - 2112;

h)  Failure to Pay All Earned Wages Including Minimum and Overtime Wages §§ 204, 206, 226.2, 226.8, 227.3, 510, 1182.12, 1194, 1194.2, 1197;

i)  Failure to Provide Meal Periods in Violation of Labor Code §§ 226.7, 512 and the applicable Wage Orders, § 11;

j)  Failure to Provide Accurate Itemized Wage Statements in Violation of Labor Code §§ 226, 226.3, and 1174;

k)  Failure to Reimburse for Necessary Business Expenditures; Labor Code § 2802;

l)  Failure to pay Plaintiffs and Aggrieved Employees waiting time penalties upon separation of employment pursuant to Labor Code §§ 201-204;

m)  Failure to provide accurate itemized wage statements to Plaintiffs and other Aggrieved Employees pursuant to Labor Code §§ 226, 226.3;

n)  Failure to maintain accurate records regarding the employment of Plaintiffs and other Aggrieved Employees as herein alleged pursuant to Labor Code §§ 1174 and 1174.5;

203.  Labor Code § 1197.1 also provides "[a]ny employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission shall be subject to a civil penalty . . . as follows: (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid . . . (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed.

204.  Further, Labor Code § 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a § of this chapter or any provision

-48-

regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid."

205.    As set forth above, Defendants have violated numerous provisions of the Labor Code regulating hours and days of work as well as the IWC Wage Orders.  Accordingly, Plaintiffs also seek the remedies set forth in Labor Code §§ 558 and 1197.1 for himself, the underpaid employees, and the State of California.

206.    Plaintiffs are "Aggrieved Employees" because he was employed by the alleged violators and had one or more of the alleged violations committed against him, and therefore is properly suited to represent the interests of all other Aggrieved Employees.

207.    Plaintiffs have exhausted the procedural requirements under Labor Code § 2699.3 as to Defendants and are therefore able to pursue a claim for penalties on behalf of himself and all other Aggrieved Employees under PAGA.

208.    Pursuant to Labor Code §§ 2699(a), 2699.3 and 2699.5, Plaintiffs are entitled to recover civil penalties, in addition to other remedies, for violations of the Labor Code §§ cited above and alleged throughout this Complaint.

209.    For bringing this action, Plaintiffs are entitled to attorney's fees and costs incurred herein.

210.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

1.    For certification of this action as a class action, including certifying the Class and Subclasses alleged by Plaintiff;

2.    For appointment of Plaintiff, ABRAHAM GARCIA as the class representative;

3.    For appointment of Jose Garay of JOSE GARAY, APLC as class counsel for all

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

purposes;

4.    For compensatory damages in an amount according to proof with interest thereon;

5.    For economic and/or special damages in an amount according to proof with interest thereon;

6.    For damages, monetary relief, wages, premiums, benefits and penalties, including interest thereon;

7.    For vacation pay pursuant to Labor Code § 227.3;

8.    For expense reimbursements pursuant to Labor Code § 2802;

9.    For waiting time penalties pursuant to Labor Code § 203;

10.    For split-shift premiums, according to proof;

11.    For reporting time pay, according to proof;

12.    For liquidated damages pursuant to Labor Code § 1194.2;

13.    For statutory penalties to the extent permitted by law, including those pursuant to the Labor Code and IWC Wage Orders, including but not limited to, §§ 226.3, 432, 1198.5, 2100 *et. seq.*;

14.    For restitution to Plaintiff and Class Members of all money and property unlawfully acquired by Defendants through unfair or unlawful business practices pursuant to Business and Professions Code §§ 17200 *et seq.*;

15.    For PAGA Civil Penalties;

16.    For an order requiring Defendants to restore and disgorge all funds to each employee acquired by means of any act or practice declared by this Court to be unlawful, unfair or fraudulent and, therefore, constituting unfair competition under Business and Professions Code §§ 17200, *et seq.*;

17.    For prejudgment interest on all sums recovered pursuant to Labor Code § 218.6 and Civil Code §§ 3287 and 3289;

18.    For post judgment interest on all amounts awarded to Plaintiff and Class Members as provided by law;

19.    For recovery of attorneys' fees and costs provided by Labor Code §§ 226, 1194, and

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT

1          Code of Civil Procedure § 1021.5;

2     20.    For injunctive relief pursuant to Labor Code § 2108; and,

3     21.    For such other relief as the Court deems just and proper.

4
Dated: September 27, 2024          **JOSE GARAY, APLC**

5

6                                   By:  _____

7                                        Jose Garay
                                         Attorneys for Plaintiff
8

9                        **<u>DEMAND FOR JURY TRIAL</u>**

10      Plaintiff hereby demands a jury trial on all issues so triable.

11

12
Dated: September 27, 2024          **JOSE GARAY, APLC**

13

14

15                                  By:  _____

16                                       Jose Garay, Esq.
                                         Attorneys for Plaintiff
17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION & PAGA COMPLAINT